## The Trustees of the South Newmarket Methodist Seminary *vs.* Peaslee, Ex'r.

A testator made a bequest to the "Franklin Seminary of Literature and Science, Newmarket, N. H." There was no institution of that name, but there was an institution incorporated by the name of the "Trustees of the South Newmarket Methodist Seminary."—*Held*, that there was a latent ambiguity in the description of the legatee in the will, which might be explained by parol evidence.

In the year 1834, twenty-eight persons, principally Methodists, established a school by subscription in South Newmarket, called the Franklin Seminary of Literature and Science, which was encouraged by the Methodists generally, and which was the only public school in Newmarket. On the 7th day of January, 1837, the subscribers were incorporated by the name of the Trustees of the South Newmarket Methodist Seminary. On the 12th day of August, 1839, the defendant's testator bequeathed the sum of $500 to the "Franklin Seminary of Literature and Science, Newmarket, N. H." He was a Methodist clergyman, residing at Plaistow, and it did not appear that he knew the name of the school had been changed. Some years previous he asked a friend to what institution he should make a donation, and was told, "to the Franklin Seminary at South Newmarket." His wife at his request wrote the name on a piece of paper, which the testator placed in his pocket-book. He had often enquired how the school at South Newmarket prospered, and often spoke of the Newmarket Seminary.—*Held*, that this evidence was competent to prove that the testator intended the legacy for the plaintiffs, who were the incorporated institution.

Where the description of a legatee is erroneous in part, but there is enough to indicate the person intended, independent of the error, the legatee will take, under the rule "*falsa demonstratio non nocet.*"

A bequest was made to the "Franklin Seminary of Literature and Science, Newmarket, N. H." There was no school of that name, but there was an institution incorporated by the name of the "Trustees of the South Newmarket Methodist Seminary," and there was no other public school in Newmarket. —*Held*, that as the bequest was to a seminary at Newmarket, the trustees were entitled to the legacy.

*Semble*, that declarations of a testator, at the time of making his will, showing who was meant by his description of the legatee, are admissible, but that declarations made before or after that time are inadmissible.

A corporation cannot be a trustee for purposes foreign to its institution.

A corporation was empowered "to establish an institution in the town of Newmarket for the instruction of youth."—*Held*, that the corporation could not be a trustee, to hold funds and pay over the income thereof for the support of missionaries.

Debt, to recover two legacies bequeathed to the plaintiffs by

the will of Reuben Peaslee.   One of the legacies was of the sum
of five hundred dollars, given to the plaintiffs by the name of
" The Franklin Seminary of Literature and Science, Newmarket,
N. H." as a permanent fund.   The other legacy was of the sum
of two thousand dollars, bequeathed to the plaintiffs by the same
name, in trust that the net income thereof should be annually
given to the Methodist Episcopal Church, for the support of
missionaries.

The defendant pleaded *nil debet.*

The will was dated on the 12th day of August, 1839, and was
proved on the 12th day of February, 1840.   The 8th article or
clause in the will was as follows :  " I give, bequeath and devise
to the Franklin Seminary of Literature and Science, Newmar-
ket, N. H. five hundred dollars as a permanent fund, the interest
of which alone to be expended."

The 9th clause was in the following words :  " I give, bequeath
and devise to said Franklin Seminary the sum of two thousand
dollars, in trust, that the net income thereof shall be annually
given to the Methodist Episcopal Church for the support of mis-
sionaries."

The plaintiffs, for the purpose of showing that the testator in-
tended to give the legacies to them, and that he meant them by
the name mentioned in the will, called Nathaniel E. Burleigh as
a witness, who testified that in the year 1834 a public school was
commenced in South Newmarket Village, (also called Newfields
Village,) in Newmarket, and that the land was purchased and
the building erected for the use of the school, by subscription ;
that the first instructor of the school was the Rev. Amasa Buck,
who continued to keep it, as the witness thought, about two
years, and that the name of the school while it was kept by Mr.
Buck was " The Franklin Seminary of Literature and Science ;"
that after Mr. Buck ceased to keep the school, arrangements
were made for continuing it, and the subscribers, who erected
and owned the building, twenty-eight in number, on the 21st day
of October, 1836, requested in writing George Hilton, Nathan-
iel E. Burleigh and Jewett Tasker, to whom the land on which
the building stood had been conveyed, to convey it to the plain-

tiffs, which they accordingly did on the 30th day of January, 1837. Mr. Buck was a Methodist clergyman, and the Methodists generally encouraged the school. After he went away, the school was discontinued for a few months, until the plaintiffs were incorporated, and was then begun again under a new instructor, appointed by the plaintiffs, in the same building that Mr. Buck occupied, and has been continued from that time until the present time by the plaintiffs, in the same building, under different instructors appointed by them. There has been no other public school in Newmarket since the year 1834 and long before that time, except this school and the school kept by Mr. Buck, and all the teachers of the school have been Methodists.

Upon the cross examination of the witness he said that Mr. Buck had the use of the building from the committee without rent, under a written contract that he should so occupy it as long as he should keep a good school, and that he kept it on his own account, receiving the tuition fees of the scholars. In answer to an inquiry whether there were anything sectarian in the school, the witness answered that the understanding was that nothing should be taught in it but literature and science; that it was understood that no religious tenet should be introduced into it, and that the scholars belonged to various denominations; that of the twenty-eight subscribers for building the house, thirteen belonged to the Methodist church, and he thought that sixteen of those subscribers generally went to the Methodist meeting, although three of them also contributed to support other religious societies, and attended another meeting as soon as a meeting-house belonging to another denomination was erected in their neighborhood. Only one of the committee who took a deed of the land and conveyed it to the plaintiffs was a member of the Methodist church. After the act incorporating the plaintiffs, the school was spoken of for a year or two as the Franklin Seminary, and sometimes as the Franklin Seminary of Literature and Science, and the witness had frequently heard people thus speak of it, although it was more frequently spoken of by its present name.

The plaintiffs then offered Rev. John F. Adams as a witness,

who testified that he was and had been a minister of the Methodist persuasion for thirty years; that he was well acquainted with Reuben Peaslee, who was a Methodist minister and resided in Plaistow; that he was also acquainted with Mr. Buck, who was, at the time he kept the school, a Methodist minister in regular standing.

The plaintiffs then offered in evidence the written request of the subscribers, and the deed from Hilton, Burleigh and Tasker to the plaintiffs, of the land and building, in trust that a public school should be kept therein, executed on the 30th day of January, 1837. Also a copy of the act of incorporation of " The Trustees of the South Newmarket Methodist Seminary," passed on the 7th day of January, 1837, and a copy of the record of the organization of said corporation, on the 2d day of February, 1837, and of the by-laws then adopted, by which the nomination of the trustees and the control and management of the institution are given to the New-Hampshire Conference of the Methodist Episcopal Church.

The plaintiffs also introduced the deposition of James Thom, who stated that he wrote the will of Reuben Peaslee, according to his special directions. The deposition also contained the following sentences: " When he spake of the Franklin seminary of literature and science, New-Market, N. H., and directed me to insert the legacies in the will named, I asked him what institution he intended? and whether he was certain that the institution was incorporated? and whether he was certain that he was correct in the name of the corporation? He replied that he intended to make the legacies to the Methodist school, or seminary, then in that part of Newmarket called New Fields, and that the institution was incorporated and under the control and management of the Methodists, and that he felt confident the corporate name was as stated in the will.

Sally Peaslee, the widow of the testator, deposed, that after the will was made, her husband told her that he had given by his will five hundred dollars to the school in South Newmarket, and two thousand dollars for the support of missions, to be paid to the trustees of the school; that several years before the tes-

tator's death the Rev. Samuel Norris, of Newmarket, called on him and requested him to make a donation for building the academy at South Newmarket; that the testator asked him what institution he should give it to, when he settled his business, and Mr. Norris answered, "to the Franklin Seminary at South Newmarket;" that at the request of her husband she wrote down the name that Mr. Norris gave, and handed it to her husband, and he placed it in his pocket-book. She also stated that her husband never knew, to her knowledge, that the name of the school at South Newmarket was changed; that she saw something in the paper that led her to think the name had been changed, and asked him if it had not been changed, and he said he thought not, and that this was not long before the will was made; that before the will was made she had heard him inquire how the school at South Newmarket prospered, and that she had heard him talk about the Newmarket seminary a great number of times.

The plaintiffs then offered in evidence a copy of the administration account of the defendant upon the estate of the testator, showing a balance in the hands of the executor of $6724.81. It was admitted that a demand of the legacies was duly made on the defendant, on the 16th day of November, 1840.

Upon the foregoing case a verdict was taken for the plaintiffs, by consent, for the sum of $2775.00, being the amount of the legacies, and interest from the time of the demand, subject to the opinion of the court; upon which judgment is to be rendered, or it is to be amended, or set aside, or judgment rendered for the defendant, as the court may direct.

*James Bell*, for the defendant. We contend that the plaintiffs have not established their right to either of the bequests claimed by them, because they are not sufficiently identified as the legatees; that they cannot take the legacy of $2000.00, which they claim as trustees, because they cannot be constituted trustees for such a purpose; and that the evidence of the testator's intention was incompetent and was improperly admitted.

1. The plaintiffs are not identical with the Franklin Seminary of Literature and Science, nor in any legal sense their successors.

The corporation prosecuting the suit is not composed of the same individual members as the voluntary association to which the bequest purports to be made. The latter was unconnected with any religious sect, and was entirely under the management of those who formed it by becoming subscribers, while the former, as its name imports, was a sectarian institution, and is expressly placed under the control of the general Methodist conference. It has been decided that property held by a voluntary association who are subsequently incorporated, does not vest in the corporation, without a regular conveyance to them. And it will hardly be contended that the circumstance of instruction being given in the same place, the conveyance of the real estate to the plaintiffs by the trustees of the former association, or the patronage of both schools to some extent by Methodists, could identify them, or render the plaintiffs competent to receive bequests as the privies of the Franklin Seminary.

But the plaintiffs contend that after rejecting part of the description of the legatee in this will, as inaccurate and erroneous, they are described with sufficient certainty as the legatees intended by the testator. But it is believed that the principles of construction upon which this question must turn, are well settled, and are decisive against this position. As bequests and devises are required to be in writing, no principle of construction is admissible, the effect of which is to substitute parol evidence. *Miller* vs. *Travers*, 8 *Bingh.* 244; *Gresley Eq. Ev.* 198; 2 *St. Ev.* 545, 6, 7; *Hogg* vs. *Smith*, 1 *Taunt.* 347. And where either the bequest or the legatee is truly and sufficiently described, parol evidence is never received to show that another party or another estate was intended by the testator. *Newton* vs. *Lucas*, 6 *Sim.* 60; *Preedy* vs. *Holtom*, 4 *Ad. & E.* 81; *Van Vechten* vs. *Sill*, 11 *Johns.* 201; *Bell* vs. *Morse*, 6 *N. H. Rep.* 205; 2 *St. Ev.* 552, 3. When the parol evidence, where admissible, merely leaves it uncertain which of two parties is the legatee intended, the heir at law will take. *Thomas* vs. *Thomas*, 6 *T. R.* 671. It is only when no legatee, agreeing with the whole name or description, can be found, that the principle of construction, *falsa demonstratio non nocet*, is applied, and part of the name

or description rejected.  In this case the will truly and accurately describes an association which had carried on the business of public instruction at Newmarket.  If that association had ceased to act, and had become incompetent to accept the bequest, which does not appear, and is not admitted, the legacy may fail; but parol evidence is not let in to show that another association has been chartered and organized, agreeing with the former in some particulars of the description, for the purpose of showing them entitled to this bequest.  In the case of an individual alive before the time of making the will, and known to the testator, it would hardly be contended that evidence should be received that some other individual, who happens to be still living, and is therefore capable of taking the legacy, corresponds in certain particulars with the name or description in the will, or was intended to receive the legacy, and should therefore recover it; and certainly not without evidence that the death of the party truly described in the will was known to the testator.  *Maybank* vs. *Brookes*, 3 *Bro. C. C.* 84.  The very bequest in such a case is the strongest evidence that the testator understood the party mentioned as the object of his bounty to be still living.

It does not appear in this case that the persons constituting the Franklin Seminary are not now as capable as they were at any time, of taking these bequests.  But if it had been otherwise, evidence that there was another body, agreeing with this in some particulars, should not be received until it has been shown, not only that the Franklin Seminary had ceased to exist, but that its dissolution was known to the testator.  This is the first step in the proof, without which the other testimony was irrelevant and improper.  But the evidence shows that the testator apprehended that the Franklin Seminary was, at the time of making the will, existing as an incorporated institution.

If the statute 43 *Eliz.*, *ch.* 4, has been adopted in this State, the Franklin Seminary of Literature and Science, though not incorporated, is capable of taking this legacy; but if that statute is not here in force, the second bequest to the plaintiffs would be void on account of the uncertainty and incapacity of the *cestuis que trust*, who are not shown to have any greater legal capacity than the

Franklin Seminary. *Going* vs. *Emery*, 16 *Pick.* 107 ; 2 *Shep. Touch.* 416 ; *Burbank* vs. *Whitney*, 24 *Pick.* 146.

But in no case has part of the description of the legatee been rejected, where it is a true and accurate description, as in this case, of a party known to the testator, and of whose dissolution he does not appear to have been aware. The evidence should show a party who can take, rejecting unessential particulars in the description. *Thomas* vs. *Thomas*, 6 *T. R.* 671 ; 8 *Bingh.* 244 ; 11 *Johns.* 218 ; 7 *Johns.* 218 ; 1 *Pick.* 31 ; 12 *Johns.* 77 ; *Wigram on Ex. Ev.* 68. But if we reject any part of the description here, nothing will be left like the corporate name, or the name by reputation, or any name by which they could take. The only word common to the two designations is the word " Seminary."

Parol evidence like that introduced by the plaintiffs has often been held inadmissible. *Cow. Ph. on Ev.* 1367, (*n*,) 1373, (*n* ;) 1 *Ph. on Ev.* 539 ; 2 *Atk.* 239 ; 3 *Atk.* 257. The question always is, what was the intention of the testator, as expressed by his language ? 3 *T. R.* 87 ; *Wigram on Ex. Ev.* 65 ; 2 *Ch. R.* 275 ; 5 *Pick.* 166 ; 4 *Greenl.* 368 ; 6 *Pick.* 492 ; 4 *N. H. Rep.* 24 ; 1 *Johns. Ch.* 231 ; 5 *Pick.* 409 ; 2 *Dall.* 70. And parol evidence is no more admissible in the case of wills, than in that of deeds and grants. *Wig. on Ex. Ev.* 92, 3 ; *Ph. Ev.*, note, 939. The case of *Beaumont* vs. *Fell*, 2 *P. Wms.* 142, and that of *Thomas* vs. *Stevens*, 4 *Johns. Ch.* 607, are not now regarded as authorities. *Cow. Ph.* 1375, 1425. The case of *Selwood* vs. *Mildmay*, 3 *Ves.* 306, has been doubted, or attempted to be reconciled with other authorities. 3 *Cow. Ph.* 1533 ; 8 *Bingh.* 244.

The evidence entirely fails to show a name by reputation. It does not appear that the plaintiffs were ever called the Franklin Seminary.

2. The corporation cannot hold the bequest of $2000.00, because the object of the trust is foreign to the purpose of the corporation, which is the instruction of youth. 8 *Johns.* 423 ; 2 *Cowen* 678 ; 5 *Wend.* 211 ; 1 *Paige* 214 ; 7 *Wend.* 412 ; 4 *Wheat.* 636 ; 4 *Peters* 152 ; 6 *Wheat.* 597.

The cases of *Phillips Academy* vs. *King,* 12 *Mass.* 546, and *Amherst Academy* vs. *Cowls,* 6 *Pick.* 427, do not, when rightly understood, conflict with the principle above stated, as in the first the trust was confirmed by an enabling statute, passed for the purpose, and in the last the object of the trust was within the scope of the purpose for which the charter was granted.

3. Evidence is not admissible to prove the intention of the testator as an independent fact. This objection is distinct from that first stated, which related to the *effect* of the evidence. Such evidence has been received in case of grants and devises, where there have been two estates or two legatees equally well described, but this is not a case of that description. 3 *Cowen's Phill.* 1389, 1375; 2 *St. Ev.* 552, 3; *Goblet* vs. *Beechey,* 3 *Sim.* 24; *Wigram on Ex. Ev.* 139; 7 *C. & P.* 761; 8 *N. H. Rep.* 300. This is the only exception to the rule of evidence, which has been held inflexibly to exclude parol evidence of intention in all other cases. 2 *St. Ev.* 552.

*Christie,* for the plaintiffs. It appears from the evidence that there was no such party as is named in the will. The case of *Thomas* vs. *Thomas,* 6 *T. R.* 671, shows that what took place at the making of the will is evidence, and *Langham* vs. *Sanford,* 19 *Vesey* 649, is a strong authority in favor of the admission of parol evidence to show the intent of the testator. A part of an erroneous description may ·be struck out, if enough is left to show the meaning. Here, the testator meant to make a bequest to some "seminary at Newmarket, N. H." All the other parts of the description may be rejected. The testator said that he "meant the Methodist school in that part of Newmarket called New Fields." Enough appears upon the will itself to show the intention, after the false description is rejected. *Miller* vs. *Travers,* 8 *Bingh.* 244. See, also, 3 *Ves.* 306; 4 *Dow.* 65; 2 *Dall.* 70; 1 *T. R.* 701; 6 *Ves.* 481; 3 *B. & C.* 870; *Hob.* 32; 10 *Coke* 57; *Cro. Eliz.* 106; 3 *Pick.* 332; *Ang. on Corp.* 55. That a corporation may take by a name acquired by reputation, see *Soc. for Prop. Gos.* vs. *Young,* 2 *N. H. Rep.* 310.

There is a distinction between the meaning of the words used, and the meaning the testator intended to give them. 2 *B. & Ad.* 680 ; 4 *B. & Ad.* 800 ; 2 *N. H. Rep.* 369 ; 11 *Johns.* 201.

As to the right of the corporation to act as a trustee, see *Ang. on Corp.* 87, 111. The object of the plaintiffs and that of missions is the same. Both are devoted to the cause of education. Missionaries are teachers both of learning and of religion, and that is the precise object of the plaintiffs, and no two institutions can be imagined more perfectly identical in their aims. 2 *Kent* 280 ; 12 *Mass.* 546. The court has ample powers to give effect to bequests of this character. *N. H. Laws* 510, (*Ed. of* 1830 ;) *Acts of Nov.* 1832, *p.* 75.

Gilchrist, J. The bequest in this case is to " The Franklin Seminary of Literature and Science, Newmarket, N. H." It appears that in the year 1834 a public school was commenced in South Newmarket, also called Newfields Village, the land having been purchased and a building erected by twenty-eight persons, who subscribed money for that purpose. The school was taught for about two years by Mr. Buck, a Methodist clergyman, and was encouraged by the Methodists generally, but when Mr. Buck ceased to instruct it, it was discontinued for a few months.

On the 7th day of January, 1837, the plaintiffs were incorporated by the name of the " Trustees of the South Newmarket Methodist Seminary." On the 30th day of June, 1837, the subscribers requested the persons who held the legal title to the land, to convey it to the plaintiffs, which was accordingly done. There has been no other public school in Newmarket than the school referred to.

The will was dated on the 12th day of August, 1839, and the testator, who was a Methodist clergyman, resident at Plaistow, died on the 29th day of January, 1840.

The testator has made a bequest to a seminary at Newmarket. There was but one seminary there, and that bore a name resembling the name used in the will, only in the use of the words " Seminary" and " Newmarket." Whether this be the semi-

nary intended, or not, is ambiguous, and the question arises whether the ambiguity be latent or patent?

Every claimant under a will has a right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called upon to declare. *Wigram on Ex. Ev.* 59, 138. A latent ambiguity is that which seems certain, and without ambiguity for anything that appears upon the instrument, but there is some collateral matter out of the deed that breeds the ambiguity. *Sugden on Vendors* 101, (*1st Am. Ed.*) This is perhaps the clearest definition of a latent ambiguity to be found in the books. There are other definitions, more complex, and therefore not so practically useful. In all cases in which a difficulty arises in applying the words of a will to the thing which is the subject matter of the devise, or to the person of the devisee, the difficulty, or ambiguity which is introduced by the admission of extrinsic evidence, may be rebutted and removed by the production of farther evidence upon the same subject, calculated to explain what was the estate or subject matter really intended to be devised, or who was the person really intended to take under the will. Where an estate is devised to a person whose description is imperfect or inaccurate, parol evidence is admissible to show who was the devisee intended to take, provided there is sufficient indication of intention appearing on the face of the will to justify the application of the evidence. *Tindal*, C. J., *Miller* vs. *Travers*, 8 *Bingh.* 244.

There it nothing ambiguous in this bequest on the face of the will. It is found upon inquiry that there is a seminary at Newmarket, but it is not called by the description given in the will. The extrinsic evidence raises a difficulty in the application of the words of the will, and makes it doubtful whether that be the seminary intended by the testator. This ambiguity thus raised, is a latent ambiguity; and as it is caused by the introduction of extrinsic evidence, so it may be removed in the same manner. Now if the evidence in this case, in the words of Lord *Coke*, 8 *Rep.* 155, " stands well with the words of the will," it is com-

petent, and will aid us in ascertaining the meaning of the testator.

There was only one public school at Newmarket, and this was taught by, and under the control of Methodists, although it does not appear that it was a sectarian school. The testator was a Methodist clergyman, and once asked another Methodist clergyman to what institution he should make a donation, and was told, " the Franklin Seminary at South Newmarket." This name was written down by the testator's wife, at his request, and placed by him in his pocket book. The evidence tends strongly to show that he did not know that the name of the school had been changed. He inquired how the school at South Newmarket prospered, and often spoke about it.

Now, these facts clearly show that the testator had in his mind the school which was afterwards incorporated by its present name. What its peculiar designation was, must have been indifferent to him, for it was the institution, by whatever name it was known, which he desired to patronize and benefit. It is a strong argument for the plaintiffs, that they possess every substantial claim to his favorable notice, whether arising from their location, their purposes, or their general religious views. No other institution is alluded to in the case which he can be supposed to have desired to benefit. It cannot, of course, be expected that authorities or cases can be found in the books where circumstances, precisely similar to those in the present case, exist, but the decisions and the reasoning in numerous cases go far enough to authorize the admission of this evidence.

In the case of *Selwood* vs. *Mildmay*, 3 *Ves.* 306, the testator devised to his wife part of his stock in the *four per cent.* annuities of the Bank of England; and it was shown by parol evidence that at the time he made his will he had no stock in the *four per cent.* annuities, but that he once had some, which he sold out, and had invested the produce in long annuities. It was held that the bequest was in substance a bequest of stock, using the words as a denomination, not as the identical *corpus* of the stock; and as none could be found to answer the description but the long annuities, that stock should pass rather than the will be al-

together inoperative. In *Day* vs. *Trig*, 1 *P. Wms.* 286, there was a devise of all the testator's freehold houses in Aldersgate street, where in fact he had no freehold houses, but had leasehold houses. The devise was held in substance and effect to be a devise of his *houses* there ; and as there were no freehold houses there to satisfy the description, the word *freehold* should rather be rejected than the will be totally void. A devise to the " mayor, jurats, and town council of the ancient town of Rye," was held to be good, though they were incorporated as the mayor, jurats and *commonalty. Attorney General* vs. *Rye*, 7 *Taunt.* 546. *Gibbs*, C. J. said that the intent was to give to a corporation, and that there was no other corporation of any similar description. A testator created a trust for the payment of an annuity to his brother, Edward Parsons, for life, and after his death the same to go equally among his children by his present wife. At the time of making the will the testator had no brother living except Samuel Parsons, who had a wife and children ; but, four or five years before, he had had a brother named Edward, who was then dead, and legacies were given by the will to his wife and children. The testator had been in the habit of calling his brother, Samuel, Edward and Ned. It was held that the children of Samuel were entitled. *Parsons* vs. *Parsons*, 1 *Ves. jr.* 266.

These authorities are sufficient to show the propriety of admitting the parol evidence in this case. Perhaps the case may more properly come within the operation of the rule, *falsa demonstratio non nocet.* It is characteristic of the cases within that principle, that there is a sufficient description of the object or subject intended, independent of the erroneous description. In the case of *Miller* vs. *Travers*, 8 *Bing.* 244, Lord C. J. *Tindal* says that the cases of *Selwood* vs. *Mildmay*, and *Day* vs. *Trig*, above cited, properly come within this rule. In *Connolly* vs. *Pardon*, 1 *Paige* 291, Mr. Chancellor *Walworth* says, " if a legacy was given by a testator to his brother John, and it turned out in evidence that he had but one brother, whose name was James, there could be no doubt that the latter would be entitled, because the description of brother in that case would alone be sufficient, and

the name would be rejected as surplusage." Enough of certainty must remain, after rejecting the *falsa demonstratio*, to ascertain the object or subject matter intended. *Kenyon*, C. J., *Thomas* vs. *Thomas*, 6 *T. R.* 676. " If the testator does err in the name but not in the person, such error shall not hurt." *Swinburne on Testaments* 389. If in this case the devise had been to " the Seminary at Newmarket," as there was one seminary only, the plaintiffs would undoubtedly have been entitled to the benefit of it. And we think that, both upon this ground, and because the extrinsic evidence clearly shows that such was the intention of the testator, the plaintiffs are entitled to recover in this action. *Jackson* vs. *Clark*, 7 *Johns.* 217 ; *Jackson* vs. *Sill*, 11 *Johns.* 212 ; *Jackson* vs. *Loomis*, 18 *Johns.* 84 ; 19 *Johns.* 450.

As to the evidence of the testator's declarations at the time of making the will, the authorities are that they are admissible to show who he meant by the description of the devisee. *Hodgson* vs. `Hodgson*, 2 *Vernon* 593 ; *Harris* vs. *Bp. of Lincoln*, 2 *P. Wms.* 135 ; *Duke* vs. *Duchess of Rutland*, 2 *P. Wms.* 215 ; *Thomas* vs. *Thomas*, 6 *T. R.* 671 ; *Whitaker* vs. *Latham*, 7 *Bingham* 628 ; *Farrar* vs. *Ayres*, 5 *Pick.* 409. But declarations made after or before the time of making the will, are said to be incompetent. But it is unnecessary to settle the point in this case. Our opinion is that the legacy was intended for the benefit of the plaintiffs, and that they are entitled to recover the legacy of five hundred dollars.

The other question in the case is, whether the plaintiffs are entitled to recover the sum of $2000.00, bequeathed to them in trust, that the income should be paid to the Methodist Episcopal Church.

The weight of authority seems to be that corporations cannot be seized as trustees for purposes foreign to their institution. A corporation has no powers other than such as are specifically granted by the charter, or are necessary for the purpose of carrying into effect the powers expressly granted. *The People* vs. *Utica Ins. Co.*, 15 *Johns.* 358. They have no powers but such as are granted expressly or incidentally ; such powers and

capacities as are given them and none other. *The People* vs. *Trustees of Geneva College,* 5 *Wend.* 217. A corporation is a mere political institution, a creature of the legislature, having no other powers than such as are given to it by its creator, or such as are incidental or necessary to carry into effect the purposes for which it was established. *Fire Ins. Co.* vs. *Ely,* 2 *Cowen* 678. They cannot act as trustees in any matters in which they have no interest. *In the matter of Howe,* 1 *Paige* 214. Neither the supervisors of a county, who are a corporation for special purposes, and with special powers only, nor any other corporation, can hold land in trust for any other purpose than that for which the corporation was created. *Jackson* vs. *Hartwell,* 8 *Johns.* 420. A corporate body is the mere creature of law, and derives all its power from the act of incorporation. *Head* vs. *The Providence Ins. Co.,* 2 *Cranch* 128. The act of incorporation is to them an enabling act. It gives them all the power they possess. *Marshall,* C. J., *Ibid.* 169. That a corporation is strictly limited to the exercise of those powers which are specifically conferred on it, will not be denied. The exercise of the corporate franchises, being restrictive of individual rights, cannot be extended beyond the letter and spirit of the charter. 4 *Peters* 168, *Beatty* vs. *Lessee of Knowler; McLean,* J. From the marginal note to the case of the *Trustees of Phillips Academy* vs. *King,* 12 *Mass.* 546, it might be inferred that the powers of corporations to act as trustees were not limited, as the above authorities would seem to indicate. The note is, " an aggregate corporation is capable of taking and holding property as a trustee." But that decision is consistent with the others. By the provisions of the original deed of the donors, it was made the duty of the master of the seminary to instruct students not only in the truths of christianity, but upon certain doctrinal points. The grantees were afterwards incorporated, and were prohibited from acting contrary to the design of the donors. A donation was subsequently made, for the purpose, among other things, of educating students for the ministry. The trustees were invested with farther powers by the legislature to receive additional donations for the support of a theological institution,

and a devise was made to the trustees for the use and benefit of the theological institution. But it was held that as the plaintiffs were trustees to execute the will of the donors, as set forth in the deeds of conveyance, and that as the charter gave them powers to enable them to execute the intent, they might lawfully perform the trust. And such was the view taken of this decision in the *First Parish in Sutton* vs. *Cole*, 3 *Pick.* 240. In commenting on that case, it was said by *Parker*, C. J., that " it was considered, that as the trust created was consistent with the purposes of the original institution, the corporation might be trustees of the property so bestowed."

In the present case, the corporation are authorized to establish an institution in the town of Newmarket, " for the instruction of youth." Receiving and paying money for the support of missionaries is certainly an object foreign to the purposes of the corporation. The advancement of missions and the instruction of youth in Newmarket are different fields of action. These objects are pursued in different modes, and the operations are carried on in places far distant from each other. We are of opinion that the plaintiffs cannot execute the trust declared by the will. The verdict must be amended, by reducing it to the sum of $500.00 and the interest thereon, and for that sum the plaintiffs are entitled to

*Judgment on the verdict, as amended.*