Merrimack
No. 7363

DAVID L. GINTZLER & *a.* v. A. MICHAEL MELNICK & *a.*

September 30, 1976

*Stanley, Tardif & Shapiro (Mr. R. Peter Shapiro* orally) for the plaintiffs.

*Normandin, Cheney & O'Neil* and *David O. Huot (Mr. Huot* orally) for the defendants.

KENISON, C.J. The plaintiffs, David and Marcia Gintzler, brought suit against the defendants, Michael Melnick and Pax, Inc., for breach of a guarantee executed by the defendants in connection with a contract to construct a home for the plaintiffs. The defendant Michael Melnick was a shareholder and officer of the defendant, Pax, Inc. Trial by a jury before *Keller,* C.J., resulted in a verdict for the plaintiffs in the amount of $46,666.66. The court reserved and transferred the questions of law presented by the defendants' exceptions.

On June 25, 1971, the plaintiffs and the defendant Pax, Inc., entered into a written agreement for the sale and construction of a residence. The building was constructed by joining twelve prefabricated shells, which the parties have referred to as fiberglass pods. The building was defective in that the concrete foundation and the superstructure formed by connecting the twelve pods are not congruent. It was necessary to squeeze or pull the pods from the shape in which they were manufactured in order to attach them to the foundation. These manipulations have caused stresses in and damage to the pods. The defendants contend that the guarantee on which suit was brought does not cover this situation.

The guarantee recites that "the foundation ... has not been completed in accordance with the plans and specifications," and that the plaintiffs "are concerned that the foundation will not hold up under weather conditions, that the foundation due to its lack of depth will cause frost heaves and other damage due to frost and water ...." In consideration of the plaintiffs' acceptance of "the alternative foundation construction," the defendants guaranteed "that the foundation is structually correct" and promised to "make all repairs and respond in money damages ... [for] any damage arising out of or relating to the change in design of the foundation including cracking in the foundation, frost heaves developing under the foundation ...." The guarantee was drafted by the plaintiffs' attorney and was executed in October 1971.

Work on the house fell behind schedule, and in February 1972, the parties agreed to terminate the contract before Pax, Inc., had fully performed. The plaintiffs paid in all $25,650 with respect to the contract price of $29,800; and the parties executed mutual releases. The release given by the plaintiffs provides, "However, this release shall not apply or in any way affect whatever warranties made concerning the concrete foundation ...." The parties agree that this provision refers to the guarantee quoted above.

The plaintiffs contend that the guarantee covers damage caused by the misfit between the foundation and the superstructure. The defendants contend that the guarantee covers only damage caused by frost in the ground. It is agreed that no damage has been caused by frost. The defendants argue that the plaintiffs' claim, not being covered by the guarantee, is barred by the release which the plaintiffs gave the defendants.

Evidence was introduced of the circumstances surrounding the execution of the guarantee. The contract called for a minimum three foot foundation, but the foundation in fact had a depth varying from nine to twenty-eight inches. The pods had been set on, but not attached to, the foundation before the guarantee was executed. It was apparent then that the pods would not fit properly on the foundation. The plaintiffs spoke to the defendants regarding these circumstances, and the defendant Melnick assured the plaintiff "[b]efore, during and after" the signing of the guarantee "that it would work, it would fit, it would stay attached, there were no problems with the foundation . . . ." (Tr. 45).

The defendant excepted to the admission of testimony regarding the conversations of the parties "for the purpose of adding to the coverage of the guarantee." (Defendants' brief at 5) The question of "adding to the coverage of the guarantee" does not arise until the scope of the guarantee has been determined. "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . the meaning of the writing . . . ." Restatement (Second) of Contracts § 240 (c) (Tent. Drafts Nos. 1-7, rev. & ed. 1973); see Goglia v. Rand, 114 N.H. 252, 254, 319 A.2d 281, 283 (1974). "The terms of any contract must be given a meaning by interpretation before it can be determined whether an attempt is being made to 'vary or contradict' them. The question in any particular case, therefore, may become this: When does interpretation cease and when does variance begin? So far as this question is concerned, any and all surrounding circumstances may be proved so long as they are material and relevant on the issue of what the contract is and what meaning should be given to its words." 3 A. Corbin, Contracts § 543 (1960); J. Calamari & J. Perillo, Contracts § 49 (1970); see Farnsworth, "Meaning" in the Law of Contracts, 76 Yale L.J. 939, 959 et seq. (1967).

In this case the trial court withdrew from the jury all claims based on alleged oral warranties, and instructed the jury, "You cannot adopt a construction of the guarantee that is inconsistent

with the provisions of the guarantee, but, in resolving any ambiguities in the guarantee, you are to consider all pertinent factors and decide what the parties actually intended on a mutual basis by the provisions that were made." (Tr. 387) In these circumstances evidence was properly admitted of the parties' conversations preceding and contemporaneous with the execution of the guarantee. *Spectrum Enterprises, Inc. v. Helm Corp.,* 114 N.H. 773, 775-76, 329 A.2d 144, 146-47 (1974); Annot., 40 A.L.R.3d 1384, 1397 (1971).

"A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." Restatement (Second) of Contracts § 238 (2) (Tent. Drafts Nos. 1-7, rev. & ed. 1973); 3 A. Corbin, Contracts § 554 (1960). The issue of the scope of the guarantee was properly submitted to the jury, and its verdict is supported by the evidence. *Copeland Process Corp. v. Nalews, Inc.,* 113 N.H. 612, 312 A.2d 576 (1973); *Kalman v. Hutcheson,* 111 N.H. 36, 276 A.2d 260 (1971).

The defendants state their next contention as follows: "Even if the agreement were ambiguous and even if the failure of the pods to fit on the foundation ... were specifically covered by the guarantee, there was no evidence that the failure of the pods to fit on the foundation had anything to do with the foundation itself." The defendants suggest that something might have been wrong with the pods, and argue that "the Court should not have permitted the jury to speculate as between two equally probable causes of plaintiffs' damages, only one of which the defendants were responsible for." Pax, Inc., had an obligation to build a house in which the foundation and the superstructure joined properly. *See Norton v. Burleaud,* 115 N.H. 435, 342 A.2d 629 (1975). The defendants guaranteed that a proper foundation would be constructed for the pods from which Pax had chosen to construct the building. The defendants are liable for the failure of Pax to perform in accordance with the guarantee.

The defendant Melnick argues that there was no consideration for his personal guarantee. *See John A. Connare, Inc. v. Gray,* 113 N.H. 125, 302 A.2d 813 (1973). The plaintiffs received the guarantee in consideration of their acceptance of a foundation which did not meet the standards of the contract. Restatement (Second) of Contracts §§ 89C and 89D (Tent. Drafts Nos. 1-7, rev. & ed. 1973); 1 A. Corbin, Contracts § 144, at 625 (1963); *Philips Elec-*

*tronics & Pharmaceutical Ind. Corp. v. Leavens,* 421 F.2d 39 (3d Cir. 1970). It could be found that Mr. Melnick as one of the three shareholders of Pax, Inc., benefitted from the modification of the contract, but he is bound by his promise even in the absence of such a finding. *Ethyl Corp. v. Jalbert,* 270 Ore. 651, 529 P.2d 368 (1974); *Investment Properties v. Norburn,* 281 N.C. 191, 188 S.E.2d 342 (1972); *see Griswold v. Heat Incorporated,* 108 N.H. 119, 122, 229 A.2d 183, 186 (1967).

The defendants' final contention is, "The court erred in permitting plaintiff David Gintzler to testify as an expert on the cost of making repairs to fiberglass finish and of moving and storage." Mr. Gintzler had observed daily the defects in the fiberglass pods and had fixed some of them. He knew what was in his house and had stored his household goods while the building was being built. The trial court properly found that Mr. Gintzler's knowledge of the matters in question would aid the jury in their search for truth. *Paquette v. Connecticut Valley Lumber Co.,* 79 N.H. 288, 290, 109 A. 836, 837 (1919), *quoted with approval* in 7 J. Wigmore, Evidence § 1924 (1940); *Cormier v. Conduff,* 109 N.H. 19, 241 A.2d 795 (1968). There was no error in the admission of this testimony. *Heath v. Joyce,* 114 N.H. 620, 622, 326 A.2d 260, 262 (1974); J. Maguire, J. Weinstein, J. Chadbourn and J. Mansfield, Cases and Materials on Evidence 304 (1973).

*Judgment on the verdict.*

All concurred.