Hillsborough
No. 78-244

## NORMAN J. MacLEOD

v.

## CHALET SUSSE INTERNATIONAL, INC.

April 13, 1979

*Leonard, Prolman, Gall, Shapiro, Jordan & Groff P.A.*, of Nashua (*Richard W. Leonard* orally), for the plaintiff.

*Hamblett & Kerrigan P.A.*, of Nashua (*Joseph M. Kerrigan* orally), for the defendant.

GRIMES, J. This is an action in assumpsit on a written consulting agreement between the plaintiff and the defendant corporation. In the superior court, the plaintiff alleged and proved to the satisfaction of the jury that the defendant corporation had breached its contractual obligation to pay plaintiff the yearly "salary" stipulated in the written agreement, even though plaintiff had failed to render any of the consultation requested of him by the defendant. The issue here presented is whether, considering the continued vitality of the parol evidence rule, the trial court erred in admitting certain extrinsic evidence of the parties' intent concerning the amount of consultation contemplated at the time of agreement as a prerequisite to plaintiff's payment. We hold that no error was committed.

The following facts appear in the record. In 1966, the plaintiff and one Fred Roedel, a long-time friend of the plaintiff, became interested in the financial success of a low-cost motel chain located in California and other Western States. The two men travelled to Arizona, where they studied the construction and business operations of two of the motels. Upon their return to Massachusetts they decided to begin a similar motel chain in the east. Plaintiff and Roedel each invested $20,000 as security and obtained financing from a Nashua, New Hampshire bank to construct three motels and a restaurant. Plaintiff worked at the job sites as construction overseer on a full-time basis without pay or expenses for some thirteen months, and he managed to build each motel for substantially less money than the construction mortgage secured for it.

During the construction, plaintiff and Roedel each owned 50% of the stock of the various corporations they had formed. After completion of the construction, however, problems arose between the two. Plaintiff was unhappy with the publicity Roedel had generated portraying Roedel as the sole moving force behind the venture. Relations strained to a point where Roedel suggested that he and some friends would buy out the plaintiff's share. After extended negotiations the plaintiff agreed to sell.

Various draft agreements were discussed and negotiated until it was decided that two agreements would be executed, a "stock sale" agreement and a "consulting" agreement. The two agreements were executed contemporaneously. The stock sale agreement makes specific reference to the consulting agreement as partial consideration for its execution; the consulting agreement, however, fails to mention the sale. In pertinent part, the consulting agreement provides:

> [The defendant] Company agrees to retain [the plaintiff] for a term of twelve years from the date of execution of this

agreement as a consultant, and [the plaintiff] agrees to perform *such duties in the general area of consultation in matters relating to the management of motel enterprises at such times as shall be mutually agreed between the parties* during the term of this agreement. It is understood and agreed that [the plaintiff] is a contractor and independent business man reserving his right to engage in similar and competing activities and that the consultations contemplated hereby shall not be such as to unreasonably interfere with his other business activities. ·. . . The compensation to be paid to [the plaintiff] therefore during said term shall be Fifteen Thousand Dollars ($15,000.00) per annum. . . . It is agreed that this agreement shall not terminate except on expiration of the term hereof or on the death of [the plaintiff]. (Emphasis added.)

The plaintiff was paid $15,000 each year for the two years (1969–1970) following execution of the agreements. During that time he was not asked, nor did he volunteer, to perform any consultation services for the defendant, despite the fact that he was residing in the vicinity of the corporate headquarters. Thereafter, plaintiff moved to Nevada. In November 1970, Roedel requested that plaintiff return to Massachusetts to inspect and advise on the economies of a pre-cast, pre-stressed concrete building process that defendant had utilized in one of its motels, but the plaintiff refused to return to Massachusetts. Again in January 1971, he was asked to do the same but declined to accept the invitation. Twice more the same request was made without success, and when on April 1, 1971, the third annual payment was due, the defendant refused to make it. Subsequent payments also have been refused.

The plaintiff brought suit against the defendant in December 1972, alleging a breach of contract and claiming that he had rendered all services required of him by the consulting agreement. On March 15, 1976, the day set for trial, the plaintiff moved to amend his declaration to conform with his altered theory of recovery, that being that it was never intended that he be required to perform consulting services and that the yearly payments were intended as deferred payment for his stock in the defendant and allied corporations. The court granted the motion and the case was continued until May 2, 1977.

Prior to trial the court reviewed the plaintiff's intended opening statement. After argument of counsel, the court ruled on the record that plaintiff's extrinsic evidence relating to the parties' intent in signing the consulting agreement would be admitted subject to defendant's exceptions. The court stated that it found several ambigui-

ties in the contract and that the jury should be allowed to hear extrinsic evidence relevant to the issue of intent. During the jury trial that followed, such evidence was allowed over defendant's objections based upon the parol evidence rule. Plaintiff sought to show that the parties had an oral understanding and agreement that he was not required to perform any services, and that the written agreement was phrased in the manner chosen solely for tax purposes so that he could extend payment for his stock over a period of twelve years and the defendant corporation could charge the payments off as a business expense. The court, over objection, also allowed the plaintiff to go to the jury on the alternative ground stated in his original declaration. The jury returned a general verdict for the plaintiff in the amount of $150,000, and then, in answer to a special question, indicated that it had found that it was the intention of both parties that no services were required of the plaintiff. *Keller*, C.J., reserved and transferred defendant's exceptions.

The defendant relies primarily upon the parol evidence rule in support of its argument that the evidence concerning the circumstances and negotiations preceding and culminating in the final written contract should not have gone to the jury. Based on our understanding of the rule, however, we cannot agree with the defendant's conclusion.

■ The parol evidence rule lends itself more readily to statement than to application. The rule in essence provides:

> When two parties have made a contract and have expressed it in a writing to which they both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Emery v. Caledonia Sand & Gravel Co.*, 117 N.H. 441 445, 374 A.2d 929, 932 (1977), *quoting* 3 A. CORBIN, CONTRACTS § 573, at 357 (1960). Nevertheless, the apparent neatness of the stated rule is misleading; for whether extrinsic evidence is offered to "interpret" rather than to "vary" the terms of the writing, or whether the writing is indeed the "complete and accurate integration" of the agreement rather than a partial or incomplete integration are, in many cases, questions not easily answered. *See, e.g., Gintzler v. Melnick*, 116 N.H. 566, 364 A.2d 637 (1976).

■■ The court's first task, then, is to interpret the agreement of the parties. This task is facilitated when, as in the present case, there is

a written instrument purporting to include and express that agreement. But the writing itself is only a manifestation of the contract, RESTATEMENT (SECOND) OF CONTRACTS, Introductory Note §§ 235–44, at 533 (Tent. Drafts Nos. 1–7, 1973), and although it is the primary aid in interpreting the present agreement, it is not the only aid. *See Rogers v. Cardinal Realty, Inc.*, 115 N.H. 285, 339 A.2d 23 (1975); *Rivier College v. St. Paul Fire & Marine Insurance Co.*, 104 N.H. 398, 187 A.2d 799 (1963). *See also Trustees v. Peaslee*, 15 N.H. 317 (1844); Murray, *The Parole Evidence Process and Standardized Agreements under the Restatement (Second) of Contracts*, 123 U. PA. L. REV. 1342 (1975). "In ascertaining intent, the language of the agreement is not completely dispositive. . . . Intent, therefore, should be determined not only in light of the instrument itself, but also in view of all the surrounding circumstances." *Rogers v. Cardinal Realty, Inc.*, 115 N.H. at 286, 339 A.2d at 25 (citations omitted). *See also Erin Food Services, Inc. v. 688 Properties*, 119 N.H. 232, 401 A.2d 201 (1979).

The court will in the first instance determine if the written contract is a complete integration of the parties' agreement. If it is, the court will next determine if ambiguities exist. If the court determines that extrinsic evidence "that would contradict the plain meaning of the terms of the contract." *Ekco Enterprises, Inc. v. Remi Fortin Construction, Inc.*, 118 N.H. 37, 41, 382 A.2d 368, 371 (1978); *Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 329 A.2d 144 (1974). If, on the other hand, the court determines that ambiguities are present, it must, with or without the assistance of the jury, resolve those ambiguities. *Gintzler v. Melnick*, 116 N.H. 566, 364 A.2d 637 (1976); *see* 3 A. CORBIN, CONTRACTS § 595 (1960).

■ In *Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 776, 329 A.2d 144, 146 (1974), this court stated that words by nature are "inherently ambiguous." This does not mean that all contracts are ambiguous. It does mean that where the parties draft an agreement in such a fashion as to leave uncertain their mutual intent, relevant extrinsic evidence concerning that intent should not be excluded.

■ The question here, therefore, is a narrow one: what did the parties *intend* by use of the words "[plaintiff] agrees to perform such duties in the general area of consultation in matters relating to the management of motel enterprises at such times as shall be mutually agreed between the parties during the term of this agreement"? *See Griswold v. Heat Corp.*, 108 N.H. 119, 229 A.2d 183 (1967). Plaintiff contends that the words are ambiguous and that extrinsic evidence was properly admitted to explain the ambiguity. Defendant, on the other hand, contends that the words are unambiguous, and that

extrinsic evidence should not have been admitted in evidence to vary their plain meaning.

Prior to plaintiff's opening, the court and counsel reviewed in chambers the proposed content of the opening statement. The court ruled that there were ambiguities in the contract and ruled that extrinsic evidence was admissible to determine the intent of the parties and overruled the defendant's objections based upon the parol evidence rule.

The jury, after a lengthy trial, rendered a general verdict for the plaintiff. In answer to a special question submitted by the court, the jury replied that their verdict was based on a finding that the parties mutually intended that no services were required of plaintiff under the contested agreement.

■ We find no reason to upset the rulings and findings of either the court or the jury. *See Dover v. Knox Mountain Corp.*, 114 N.H. 278, 280, 319 A.2d 640, 642 (1974). The consulting agreement is on its face ambiguous concerning the amount of service contemplated. The court properly put the issue before the jury, whose function it is to determine the "credibility of" and the " 'reasonable inferences to be drawn from extrinsic evidence.' " *Gintzler v. Melnick*, 116 N.H. at 569, 364 A.2d at 640 (1976), *quoting* RESTATEMENT (SECOND) OF CONTRACTS § 238(2) (Tent. Drafts Nos. 1–7, 1973). *See also Goglia v. Rand*, 114 N.H. 252, 319 A.2d 281 (1974); *Griswold v. Heat Corp.*, 108 N.H. 119, 229 A.2d 183 (1967). The jury's finding made clear that no service was intended. This finding does not vary or contradict the written provision.

■ This is not a case where consideration is lacking even though no services are required. *See Griswold v. Heat Corp.*, 108 N.H. 119, 229 A.2d 183 (1967). Two contracts are involved here, and the second, the stock sale agreement, makes specific reference to the consulting agreement as partial consideration for the purchase and sale. Reading the agreements together, we hold that the stock sale agreement constitutes sufficient consideration for the defendant's promise to pay plaintiff the yearly sum of $15,000. *Rivier College v. St. Paul Fire & Marine Insurance Co.*, 104 N.H. 398, 187 A.2d 799 (1963).

■■ The defendant also contends that it was reversible error for the court to permit plaintiff to amend his writ. We disagree. This State takes a liberal view toward amendment of pleadings, *see* RSA 514:9; *Mayhew v. New England Teamsters*, 115 N.H. 581, 347 A.2d 610 (1975), and follows the rule that the allowance of amendment is generally a matter of discretion for the trial court. *Community Oil Co. v. Welch*, 105 N.H. 320, 199 A.2d 107 (1964). We hold on the record before us that no abuse of discretion occurred.

The defendant's final contention, that the trial court erred in allowing the plaintiff to go to the jury on the alternative theory of recovery based on his original declaration, is unpersuasive despite counsel's able argument. The defendant maintains that the theories presented to the jury are mutually inconsistent, and that under the doctrine of *Harlow v. LeClair*, 82 N.H. 506, 136 A. 128 (1927), the court's action constitutes reversible error. Moreover, the defendant asserts that even if the allowance of the alternative theories were not error, it was error for the court to make its ruling after the close of plaintiff's case, thereby surprising the defense and unduly prejudicing defendant's case. We reject both arguments.

The doctrine of *Harlow v. LeClair* has been greatly narrowed in the fifty-odd years since its authorship. *See, e.g., Griffin v. Theriault*, 107 N.H. 411, 223 A.2d 655 (1966); *Bean v. Insurance Co.*, 94 N.H. 342, 54 A.2d 149 (1947); *Frye v. Yasi*, 327 Mass. 724, 101 N.E.2d 128 (1951). *See also* 9 J. WIGMORE, EVIDENCE § 2594a, at 601 (3d ed. 1940). We hold that the present case is not controlled by *Harlow*, because the plaintiff does not seek to recover on inconsistent testimony but rather on alternative legal grounds. Nor are we persuaded that the defendant was prejudiced. The jury based its decision solely on a finding that no services were required of the plaintiff and recovery was based on the amended declaration. The alternative theory of recovery based on the original declaration was therefore immaterial to its decision and defendant could not have been prejudiced by its submission.

*Exceptions overruled.*

All concurred.