McCrory v. Greenerd Press & Machine    CV-92-179-B    12/17/93

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Tammy McCrory

v.                                      Civil No. 92-179-B

Greenerd Press and
Machine Co., Inc., et. al.


**O R D E R**


Before the court in this products liability, negligence and breach of express and implied warranties action is the motion of defendant Greenerd Press and Machine Co., Inc. ("Greenerd Press") for summary judgment. Defendant asserts that (1) it is not a successor in liability to the manufacturer of the product that caused plaintiff's injuries, and (2) the statute of limitations has run with respect to the plaintiff's breach of warranty claims. For the reasons stated below, defendant's motion is granted in part and denied in part.

# I. Factual Background[1]

On April 16, 1989, Tammy McCrory sustained serious injury to her left hand while operating a pinning machine at her job for the Emerson Electric Company in Rogers, Arkansas. Greenerd Arbor Press Company ("Greenerd Arbor"), a New Hampshire Corporation, is alleged to have sold or otherwise distributed the machine in question to Emerson Electric in 1953.

Plaintiff alleges that Greenerd Press is liable as a successor corporation to Greenerd Arbor because: (1) on September 28, 1962, Calculagraph Company ("Calculagraph") signed an agreement to purchase certain assets of Greenerd Arbor; and (2) in October 1962, Greenerd Arbor assigned its right, title and interests in this agreement to the defendant, Greenerd Press.

---

[1] I assess defendant's motion according to the following standard: Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is upon the moving party to aver the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists. Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir. 1983).

Plaintiff alleges that Calculagraph assumed Greenerd Arbor's liabilities pursuant to the Asset Purchase Agreement and that Greenerd Press succeeded to these liabilities when it obtained the assignment of Calculagraph's interest in the Asset Purchase Agreement.

## II. Discussion

A. Successor Liability- Counts I & II

Defendant first claims that no triable issue exists as to whether Greenerd Press is a successor in liability to Greenerd Arbor. In considering this claim, I first examine New Hampshire law governing successor liability claims. Because plaintiff's successor liability claim is based upon her construction of the Asset Purchase Agreement, I next consider New Hampshire law governing the interpretation of contracts.[2] Finally, I review the Asset Purchase Agreement itself.

_____

[2] The parties have assumed that New Hampshire law governs this motion for summary judgment. In light of this assumption, and because New Hampshire law bears at least a "reasonable relation" to the dispute, I accept the parties' resolution of the question without conducting an independent examination of the choice of law issue. See Bird v. Centennial Insurance Company, 1993 WL 485781, *6 n.5 (1st Cir. 1993) (citation omitted).

1. <u>Successor Liability</u>

Generally, "a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor." <u>Dayton v. Peck, Stow and Wilcox Co.</u>, 739 F.2d 690, 692 (1st Cir. 1984) (citations omitted); <u>John S. Boyd Co. v. Boston Gas Co.</u>, 992 F.2d 401, 408 (1st Cir. 1993) (citing <u>Dayton</u>, 739 F.2d at 692); 15 <u>Fletcher Cyclopedia Corporations</u> § 7122 (1990); <u>see</u> <u>generally</u> <u>Russell v. Philip D. Moran, Inc.</u>, 122 N.H. 708, 710, 449 A.2d 1208, 1210 (1982). Notwithstanding this general rule, a purchaser of assets will be held liable as a successor to the transferor if: (1) there is an express or implied agreement to assume the transferor's debts and obligations, (2) there is a de facto consolidation or merger of the purchaser and the transferor, (3) the transaction was fraudulent, or (4) the purchaser is a mere continuation of the transferor. <u>John S. Boyd Co.</u>, 992 F.2d at 408.[3]

Plaintiff rests her case solely on the first exception to the rule, alleging that Greenerd Press agreed to assume Greenerd

_____

[3] While the New Hampshire Supreme Court has had little to say on this subject, I have no reason to believe that the court would deviate from the widely-followed principles of successor liability on which this order is based.

4

Arbor's liabilities when it accepted the assignment of Calculagraph's rights and liabilities under the Asset Purchase Agreement. Specifically, plaintiff points to Section 3 of the Asset Purchase Agreement which states:

> (a) Except as provided in paragraph (b) of this Section, the Buyer, effective at the closing time, assumes and agrees to pay, discharge and perform, and save the Seller harmless from the following contracts, obligation and liabilities of the Seller;
>
> . . . .
>
> (vi) Liabilities or obligations of the Seller, if any, arising out of or made in connection with the manufacture or sale of goods by the Seller over and above application thereto of any amounts due or to become due from any insurer; . . .

Greenerd Press, in contrast, relies on Section 14 of the Asset Purchase Agreement and argues that this section clearly provides that the defendant assumed no liabilities to third parties pursuant to the Asset Purchase Agreement. Section 14 provides:

> The provisions of this Section and the assumption by the Buyer of obligations and liabilities of the Seller as set forth elsewhere in this Agreement are for the benefit of the Seller only and shall not affect obligations of the Seller's insurers and shall not create any rights in any person other than the Seller or its successors in interest under this Agreement.

In resolving this dispute, I must interpret the agreement in accordance with New Hampshire law governing the interpretation of

5

contracts.

2. <u>Contract Interpretation</u>

The New Hampshire Supreme Court has repeatedly held that a contract should be interpreted to reflect the intention of the parties at the time it was made. <u>Parkhurst v. Gibson</u>, 133 N.H. 57, 61-62, 573 A.2d 454, 459 (1990); <u>R. Zoppo Co. v. Dover</u>, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984); <u>Trombly v. Blue Cross/Blue Shield</u>, 120 N.H. 764, 770, 423 A.2d 980, 983-84 (1980). However, what matters in the contract interpretation is "objective or external criteria rather than [the]. . . unmanifested states of mind of the parties." <u>Tentindo v. Locke Lake Colony Ass'n.</u>, 120 N.H. 593, 598-99, 419 A.2d 1097, 1101 (1980); <u>Kilroe v. Troast</u>, 117 N.H. 598, 601, 376 A.2d 131, 133 (1977).

The language of a contract must be the starting point in contract interpretation. Accordingly, extrinsic evidence will not be consulted to interpret a contract in the absence of fraud, duress, mutual mistake, or ambiguity. <u>Parkhurst</u>, 133 N.H. at 62, 573 A.2d at 457; <u>Miller v. Miller</u>, 133 N.H. 587, 590, 578 A.2d 872, 875 (1990); <u>Logic Associates, Inc. v. Time Share Corp.</u>, 124 N.H. 565, 573, 474 A.2d 1006, 1013 (1984). In construing contract language, a court must consider the contract as a whole, viewed from the perspective of the parties at the time the

6

contract was formed. R. Zoppo Co., 124 N.H. at 671, 475 A.2d at 15. Contract language will be given its common meaning, Logic Associates, Inc., 124 N.H. at 572, 474 A.2d at 1010, and will be construed from the perspective of a reasonable person. Gamble v. University System of New Hampshire, 136 N.H. 9, 12-13, 610 A.2d 357, 360 (1992). The interpretation of an unambiguous contract presents a question of law for the court. See Gamble, 136 N.H. at 13, 610 A.2d at 401.

If contract language is ambiguous, extrinsic sources may be consulted to determine the objective intent of the parties. See MacLeod v. Chalet Susse Int.'l, Inc., 119 N.H. 238, 243, 401 A.2d 205, 208 (1979). Contract language has been held to be ambiguous "when the contracting parties reasonably differ as to its meaning." Laconia Rod & Gun Club v. Hartford Acci. & Indem. Co., 123 N.H. 179, 182-83, 459 A.2d 249, 251 (1983). Although the court must determine whether contract language is ambiguous, the interpretation of an ambiguous contract must ordinarily be left to the trier of fact. Public Serv. Co. v. Seabrook, 133 N.H. 365, 370, 580 A.2d 702, 705 (1990); MacLeod, 119 N.H. at 243, 401 A.2d at 208; In re Navigation Technology Corp., 880 F.2d 1491, 1495 (1st Cir. 1989). The only circumstance in which the meaning of ambiguous contract language may be determined by the court is

7

if, after considering all of the evidence, including extrinsic evidence not weighed in construing unambiguous contract language, a rational finder of fact could resolve the ambiguity in only one way. See Gamble, 136 N.H. at 14-15, 610 A.2d at 361 (court determined the meaning of an ambiguous contract term where, upon all of the evidence, any other reading would lead to an unreasonable result).

   3. Application

After reviewing the Asset Purchase Agreement as a whole, I conclude that the Agreement is ambiguous with respect to whether Greenerd Press agreed to assume the debts of Greenerd Arbor. Moreover, I cannot say on the present record that a rational finder of fact could resolve the ambiguity in only one way even when extrinsic evidence is considered. Accordingly, the resolution of this ambiguity will have to await the trial since New Hampshire law dictates that the choice between two plausible interpretations of a contract must be left to the trier of fact. See Public Serv. Co., 133 N.H. at 370, 580 A.2d at 705.

Defendant's motion for summary judgment as to Counts I & II is denied.

8

## C. Statute of Limitations- Counts III & IV[4]

Defendant next contends that it is entitled to summary judgment with respect to plaintiff's claims for breach of express and implied warranties set forth in Counts III & IV because these claims are barred by the applicable statute of limitations.[5]

N.H. Rev. Stat. Ann. 382-A:2-725 creates a four year statute of limitations for breach of an express or implied warranty claims.  It states in pertinent part:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

By the plain language of the statute, New Hampshire has decided that the limitations period in a warranty action normally

---

[4] Because plaintiff has provided no response to this issue, she has waived the right to controvert the facts asserted by the defendant in the motions and accompanying materials regarding the issue of the applicable statute of limitations.  Jaroma v. Massey, 873 F.2d 17 (1st Cir. 1989).

[5] The law of the forum state will be applied in determining statute of limitations questions.  Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 14, 549 A.2d 1187, 1192 (1988); Gordon v. Gordon, 118 N.H. 356, 360, 387 A.2d 339, 342 (1978).  As such, New Hampshire law applies.

begins to run upon tender of delivery even though the buyer does not know the goods are defective at the time of delivery.  See Wentworth v. Kawasaki, Inc., 508 F. Supp. 1114, 1116 (D.N.H. 1981).  Moreover, since plaintiff does not contend that any warranty made by defendant's alleged predecessor was expressly extended to some future time, the only exception to this rule is inapplicable here.  See Ronyak v. General Motors Corporation, 1991 WL 288909, *1 (D.N.H.) (statute requires "a plaintiff alleging the extension of a warranty to future performance to point to 'a specific reference to a future time in the warranty.'").  Thus, I determine that the statute of limitations on the breach of warranty claims began to run when defendant's alleged predecessor tendered delivery of the pinning machine in question.

In the present matter, the pinning machine was delivered at some point in 1953.  Therefore, any breach of warranty claim expired long before plaintiff brought this action.

Defendant's motion for summary judgment as to Counts III & IV is granted.

### III. Conclusion

For the foregoing reasons the defendant's motion for summary judgment (document 17) is denied with respect to Counts I & II, and granted with respect to Counts III & IV.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

December 17, 1993

cc:  Gregory Holmes, Esq.
     Frederic Halstrom, Esq.
     Michael Gorham, Esq.