Hillsborough,
No. 5091.

RIVIER COLLEGE

*v.*

ST. PAUL FIRE AND MARINE INSURANCE COMPANY & a.

Argued December 4, 1962.

Decided January 31, 1963.

400

*Guertin & Widener* (*Mr. Antoine A. Guertin* orally), for the plaintiff Rivier College.

*Boynton, Waldron & Dill* (*Mr. Wyman P. Boynton* orally), for the defendant St. Paul Fire and Marine Insurance Company.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Richard C. Kohls* (*Mr. Kohls* orally), for Peabody Co.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *T. William Bigelow* (*Mr. Bigelow* orally), for United Glass & Aluminum Company, Inc.

The other creditor defendants furnished no briefs.

BLANDIN, J. The main issue transferred to this court is whether the contract between the plaintiff Rivier College and the defendant St. Paul Fire and Marine Insurance Company is an indemnity or a performance bond.

It appears there are two types of agreement commonly drawn in such situations as the present. The first is called an indemnity bond, the purpose of which is for the sole benefit of the owner, to secure for him the completion of the building within the terms of the contract and without extra cost to him, because of liens for unpaid subcontractors, labor and material for which he might otherwise be liable. *Mason* v. *Company*, 85 N. H. 487. The second is a performance bond, where the surety guarantees not only that the building will be completed within the contract price without extra cost to the owner, but also that payment will be made by the contractor to subcontractors and to those who furnish labor and materials. *Toner* v. *Long*, 79 N. H. 458.

The bond agreement here was executed in two parts. The first, dated July 3, 1958, standing alone, indisputably is an indemnity bond, and all counsel so agree. However, the Court has construed this agreement, together with a subsequent addendum dated July 21 following, as constituting a performance bond. No question is raised as to the proper execution of either of these instruments, and the question of their meaning becomes one of interpretation for this court. *Pettee* v. *Chapter*, 86 N. H. 419. In such cases, it is elementary that where the second agreement expressly refers to the first and deals with the same subject matter, the two should be construed together. *Bogosian* v. *Fine*, 99 N. H. 340, 344; *Hill* v. *Huntress*, 43 N. H. 480; 17 C.J.S., Contracts, s. 299. Also, the law is well established that when a bond refers, as here, to a specific contract and is conditioned upon the principal's performance of that contract, both bond and contract must also be read together. *Paisner* v. *Renaud*, 102 N. H. 27, 29; *Kenney* v. *Barry*, 86 N. H. 35; 9 Appleman, Insurance Law and Practice, s. 5276, *p.* 70. It is thus our duty to consider together the original bond and addendum agreement between the plaintiff and the

defendant insurance company with the contract between the plaintiff and J. M. Construction Co., to which the bond agreements expressly refer. The interpretation of these instruments resolves itself into one of the intent of the parties, and in determining this intent we consider not only the language of the instruments, but all relevant circumstances, including the facts found by the Trial Court. *Pettee* v. *Chapter,* 86 N. H. 419.

At the threshold of this inquiry we are met by the defendant insurance company's objection that the Trial Court erred in admitting the testimony of the attorney for the plaintiff as to his intent on insisting on the addendum to the original contract between the plaintiff and the defendant insurance company. There was evidence, however, that he had communicated his intent to the representative of the defendant prior to the execution of the addendum agreement. "In accordance with the modern tendency (9 Wig. Ev. (3d ed.) *s.* 2465) it has long been the rule here that the facts surrounding an undertaking including conversations in preliminary negotiations are admissible to aid in interpreting an agreement." *Lefebvre* v. *Waldstein,* 101 N. H. 451, 456; see also, *Perry* v. *Company,* 99 N. H. 451, 454; see *Berke Co.* v. *Bridge Co.,* 98 N. H. 261, 266. The parol evidence was properly admitted, and therefore we overrule the defendant's exception to its admission. *Perry* v. *Company, supra.*

The Trial Court found that the first bond, signed on July 3, 1958, "was not acceptable to Rivier College . . . in that it was not a performance bond but rather an indemnity bond." The existence of this fact, explaining why the plaintiff's attorney requested the addendum, is supported by the record and is binding upon us. *Pettee* v. *Chapter,* 86 N. H. 419, 423. The Trial Court also found it was the intention of the parties that a performance bond be furnished and construed the obligation of the defendant to be such. It is true that the question of intention is ultimately for this court, although in a true sense it is a question of fact. *Sylvester* v. *Newhall,* 97 N. H. 267, 272. Nevertheless, the determination of this fact is initially for the Trial Court (*Newcomb* v. *Ray,* 99 N. H. 463, 465), and such is entitled to weight.

In reaching its conclusion, it was the duty of that Court to consider, among other circumstances, the familiar principle that all parts of an agreement are to be given a meaning whenever reasonably possible. *McGinley* v. *Insurance Co.,* 88 N. H. 108, 111; *Dover* v. *Insurance Company,* 92 N. H. 59, 61. In this con-

nection, it is significant that the first paragraph of the body of the addendum reads as follows: "The St. Paul Fire and Marine Insurance Company does hereby agree that the bond . . . is a bond which guarantees the performance of a contract . . . . " We believe that the Trial Court properly construed this addendum as meaning that the defendant guaranteed the compliance of the contract between the plaintiff and McGranahan which had been assigned to the J. M. Construction Co., Inc. This contract between McGranahan and the plaintiff, in turn, expressly bound the construction company to pay all subcontractors for labor and materials used in carrying out the agreement between the construction company and the college. In such a situation, our law is established that the surety is obligated to pay the subcontractors. *Toner* v. *Long,* 79 N. H. 458. Such, too, we believe, represents the better view. Restatement, Security, *s.* 165, *ill.* 2. See 4 Corbin, Contracts, *s.* 800.

The situation before us is clearly distinguishable from cases cited as authority for the defendant, such as *Mason* v. *Company,* 85 N. H. 487, *Fleck-Atlantic Co.* v. *Indemnity Ins. Co.,* 326 Pa. 15, and *Morse Bros. Electrical Co.* v. *Martin Shore Realty Co.,* 181 N. E. 2d 549 (Mass. 1962). In the *Mason* opinion the Court was careful to point out that the principal contractor had not agreed with the owner to pay subcontractors, but it made it clear that had there been such an agreement, the surety would have been liable. *Id.,* 488. The same situation existed in the *Fleck-Atlantic Co.* case, and in addition to this there were other distinguishing circumstances. In the *Morse Bros.* opinion, the court said that no facts were in evidence sufficient to show that the parties intended a performance bond to benefit subcontractors. This is contrary to the facts in the present case.

It is also true, as urged by the defendant, that the source of the surety's obligation lies within the bond and that the original instrument standing alone, as found by the Court, was a mere indemnity agreement which would not have obligated the surety to pay the subcontractors. However, here the original bond does not stand alone, but must be construed together with the addendum agreement, as previously stated. *Bogosian* v. *Fine,* 99 N. H. 340, 344.

In summary, the Trial Court has found in all the circumstances that the intent of the plaintiff college and the defendant insurance company in making their agreement was that the defendant com-

pany should be bound to pay the subcontractors of the general contractor and that it failed to do so. We believe the record supports this conclusion.

This appears to dispose of all questions transferred, and the order is

*Remanded.*

LAMPRON, J., did not sit; the others concurred.