Grafton
No. 7814
No. 7971

RICHARD BELLAK

v.

FRANCONIA COLLEGE

DAVID ACKLEY

v.

FRANCONIA COLLEGE

May 9, 1978

*Thomas M. Pancoast*, of Littleton, by brief and orally, for the plaintiffs.

*Wiggin & Nourie*, of Manchester (*Kurt M. Swenson* orally), for the defendant.

LAMPRON, J.   These cases are actions in assumpsit to recover damages for breach of contract. Trial by the court resulted in a verdict for plaintiff Bellak in the amount of $5,680.00, and all questions of law were transferred by *Batchelder*, J. Trial by a Master (*Michael L. Slive*, Esq.) resulted in a verdict for plaintiff Ackley in the amount of $11,523.00, and all questions of law were reserved and transferred by *Johnson*, J. The cases were consolidated for purposes of appeal.

Both plaintiffs were members of the faculty of Franconia College at a time when the college was financially unstable. It was the practice of the college to extend offers of employment by letter, and the employee would accept the offer by signing and returning a copy thereof. The letters contained details, such as salary, and also contained the statement that all faculty appointments were subject to the provisions of the Franconia College personnel policy and bylaws. This procedure was used to appoint plaintiff Bellak to a two-year teaching position with an expiration date of August 31, 1977. Plaintiff Ackley's appointment was for three years with an expiration date of August 31, 1976. There is no question that contracts existed between the plaintiffs and the college, and that the faculty personnel policy and college bylaws were part of these contracts. It is the construction of the bylaws and personnel policy that is at issue.

The bylaws of the college which are pertinent in this case are the following:

> 1. Article I, § 5: "[The trustees] shall have the power to appoint all officers of instruction and administration and assign their duties and fix their salaries, and shall have

the power lawfully to remove any person whom they have appointed. . . . ['T']he trustees may expressly delegate any specific duty to any of its committees. . . ."

    2. Article V, § 1: "Officers of instruction are appointed by the Board for fixed terms and their connection with the College ceases at the end of the term unless they are reappointed. They are subject to removal by the Board during term only for grave misconduct or neglect of duty or under circumstances of financial exigency."

The faculty personnel policy was adopted by the college board of trustees in 1973. It constitutes the basic agreement between the board and the faculty on points such as hiring, firing, sick leave, etc. A joint committee on contracts composed of two faculty members, two students, the president of the college and trustee members was created thereunder. The faculty and student members were to be elected by those respective bodies. This joint committee was given the exclusive authority to consider and recommend to the board of trustees for its approval the reappointment, "non-reappointment," and dismissal of faculty members.

It is undisputed that the events of these cases are a result of the financial problems of the college. In the fall of 1975, the president announced that the college was facing a large deficit, necessitating cut-backs in all areas of its operation. The faculty, knowing that some of their members would have to be severed, passed by majority vote a resolution requesting that the board of trustees immediately declare a state of financial exigency and terminate all faculty contracts effective at the end of the academic year. The faculty felt that this device would avoid the automatic "non-reappointment" of those faculty members whose contracts would naturally expire at the end of the school year. It would place all faculty on an equal level and allow the board to determine who could be terminated with the least impact on the college. The board followed the faculty's resolution and notified all faculty members by letter on December 16, 1975, that the terminations were due to the financial exigency and were effective on August 31, 1976.

The board then established a committee to determine which members would be retained. This committee, known as the Shafer-Horning committee, adopted guidelines which evaluated the impact a faculty member's termination would have on the functioning of the college. As a result of these guidelines, the board notified the plaintiffs that they would not be reappointed. Plaintiff Ackley was unemployed the

following academic year. Plaintiff Bellak was eventually offered an appointment as a half-time officer of instruction at the college, which he accepted.

Plaintiff Bellak claimed at the trial below that his employment contract was breached because the board of trustees terminated his employment during term without regard to the faculty personnel policies, *i.e.,* the board acted independently of, and without receiving a recommendation from, the joint committee on contracts, and without affording him an opportunity to be heard. Plaintiff Ackley contends that he could not be "non-reappointed" at the end of the term of his contract without the board first receiving such a recommendation from that same committee. As can be seen, the main difference in the two cases is that plaintiff Bellak was terminated during his contract and plaintiff Ackley was terminated at the end of his contract.

██ ██ The fundamental rule of interpretation of a contract is that the contract should receive that interpretation which will best effectuate the intention of the parties when it was made. *Griswold v. Heat Corp.,* 108 N.H. 119, 123, 229 A.2d 183, 186 (1967); L. Simpson, Contracts § 102, at 210 (1965). Where as in the present case, various documents constitute the contract between the parties, the parties' intent must be ascertained from all these instruments read together as a whole. *Kilroe v. Troast,* 117 N.H. 598, 601, 376 A.2d 131, 133 (1977); *Rivier College v. St. Paul Fire Ins. Co.,* 104 N.H. 398, 187 A.2d 799 (1963). To achieve this object the court will seek to harmonize and give effect to the provisions of the various documents so that none will be rendered meaningless. 4 S. Williston, Contracts § 601, at 310 (Jaeger ed. 1961).

██ The question of the intent of the parties, however, is ultimately one for this court. *Rivier College v. St. Paul Fire Ins. Co.,* 104 N.H. at 401, 187 A.2d at 802. If extrinsic evidence has been introduced to clear up ambiguities in their language, we must interpret the documents in light of the facts found by the trial court if supported by the evidence. *Dove v. Knox Mt. Corp.,* 114 N.H. 278, 280, 319 A.2d 640, 641 (1974). If no such evidence has been introduced, this court will ascertain the intent of the parties from the language of the instruments themselves. *Lyons v. Salve Regina College,* 565 F.2d 200, 202 (1st Cir. 1977).

Applying the above rules to the present case, we note that article V, section 1, of the college bylaws provides that faculty members "are subject to removal by the Board [of trustees] during term only

for grave misconduct or neglect of duty or under circumstances of financial exigency." Article IV of the faculty personnel policy entitled "Disciplinary Action" provides elaborate and detailed procedures for the removal of a member of the faculty who has been found guilty of "grave misconduct" or "neglect of duty."

■ There is no specific provision in the personnel policy pertaining to a removal of a member of the faculty "under circumstances of financial exigency." Finances are mentioned in its introduction to the effect that the procedures outlined therein are subject to such "budgetary restraints as may from time to time be established by the full Board of Trustees." It is undisputed that the college was experiencing a financial exigency at the time in question and that the board of trustees after a vote of a majority of the faculty ordered the termination of all faculty contracts because of the financial exigency. We hold that the board of trustees had retained to itself the power to remove a faculty member during term because of financial exigency.

Plaintiff Ackley contends, however, that even if the board could terminate a faculty member unilaterally during the term of his contract under circumstances of financial exigency, it could not do so at the end of his contract without a recommendation from the joint committee on contracts. The master found that tenure, as it is traditionally understood, was not available to members of the faculty, but that the procedures in the personnel policy whereby the board could not act without the committee's recommendation were intended to be in the nature of a tenure system.

Article II, section C1 of the personnel policy is entitled "Terms" and provides as follows: "The first and second appointment of a person as an officer of instruction will normally be for one-year periods. Subsequent appointments will normally be for three years." In the light of the finding of the trial court as to lack of tenure as such, this section of the personnel policy could be interpreted to mean that once a faculty member had received an appointment he could not be "non-reappointed" to future contracts except by recommendation of the joint committee on contracts.

■ Be that as it may, we hold that article 5, section 1 of the by-laws authorizing the board of trustees to remove faculty members in case of financial exigency was not intended to mean that the board could remove those members whose contracts extended beyond the time of removal but could not remove those members whose contracts happen to expire at that time. Such an interpretation would lead to harsh, illogical and unreasonable results by unduly limiting

the action of the trustees in the circumstances. *Association of Portsmouth Teachers v. Portsmouth School Dist.*, 113 N.H. 659, 661, 312 A.2d 573, 575 (1973). We hold therefore that the power of the board of trustees to remove faculty members for reason of financial exigency was not limited by the words "during term." Bylaws Art. 5, § 1.

The verdict for each plaintiff is set aside. In view of the result reached it is unnecessary to consider the other issues raised. The order is

*Judgment for defendant in each case.*

All concurred.