FDIC v. R & A Nenni Builders          CV-91-626-B   03/12/93
              UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


Federal Deposit Insurance
Corporation

             v.                         Civil No. 91-626-B

R & A NENNI BUILDERS, et al.


                         O R D E R


     This action arises from a loan made by Numerica Savings Bank
to R & A Nenni Builders, Inc. ("Nenni Builders").  The loan went
into default and the bank foreclosed on the property securing the
loan.  The Bank then commenced actions in state court against
Nenni Builders and two alleged guarantors, Robert and Arline
Nenni, to recover the deficiency remaining due on the loan.  In a
separate state court action, the defendants filed various claims
against the bank which they also allege are defenses to their
liability for the deficiency.  The Federal Deposit Insurance
Corporation ("FDIC") removed these actions to Federal Court after
Numerica Savings Bank failed.

     The matter is before me on the FDIC's motion for partial
summary judgment.

**FACTS**

The following facts are stated in the light most favorable to the defendants.

Numerica Savings Bank agreed to loan Nenni Builders $750,000 in the spring of 1988. The loan commitment letter ("the commitment"), which was signed by Mr. Nenni at the loan closing, specifies that the loan is "for the purpose of a revolving line of credit to purchase land and construct 9 single-family homes . . . ." The commitment further states that the loan is to be secured by a mortgage on the real estate and that the note is to be endorsed by Robert Nenni, president of Nenni Builders. The commitment is silent on the subject of personal guarantees. Moreover, the only circumstance identified in the commitment under which the bank may require additional security such as personal guarantees is "if the bank discovers additional relevant facts" warranting additional security.

A loan agreement also was signed by Mr. Nenni at the closing. The agreement provides that $560,000 of the loan proceeds is to be used to refinance the acquisition of the land on which the homes were to be built. The loan agreement obligates the bank to advance the loan proceeds in installments as construction progresses. However, the agreement is silent as

2

to the bank's obligation to make additional disbursements once the entire amount of the loan is distributed.  Although the agreement references "any guarantor," it does not state that either Mr. or Mrs. Nenni must execute a personal guarantee. Instead, it provides only that the loan agreement shall be secured by a first mortgage on the land.

Mr. Nenni also signed a note at the closing.  The note provides that payment of the note is to be secured by "personal guarantees, not necessarily of even date herewith, executed by Robert Nenni and Arline Nenni, as guarantors."

Robert Nenni signed a personal guarantee at the closing. Arline Nenni was present at the closing, but was not asked to sign a new guarantee.

Both Robert and Arline Nenni had previously executed personal guarantees in favor of Numerica Savings Bank in connection with a 1987 loan.  These guarantees provide in pertinent part that:

> IN CONSIDERATION of credit heretofore or hereafter granted by Numerica Savings Bank, FSB (hereinafter called Bank) to R&A Nenni Builders, Inc. (herein called Customer), and to enable such credit to be obtained or maintained by Customer, the undersigned does hereby guarantee to Bank the prompt payment at maturity, expressed or declared, of all liabilities, primary, secondary, direct, contingent, sole, joint, several, or joint

3

and several and interest thereon, now or
hereafter at any time or times incurred, by
Customer.

The guarantees further provide that Mr. and Mrs. Nenni could terminate their obligations under the guarantees for future loans by giving the bank written notice of termination. However, neither Mr. nor Mrs. Nenni ever gave the bank written notice of an intention to discontinue the 1987 guarantees.

The entire $750,000 in loan proceeds was disbursed to allow Nenni Builders to refinance the acquisition of the land and to allow it to begin construction on the homes. On February 8, 1989, Nenni Builders closed on the sale of the first house. $123,062.50 from the sale of this house was paid to the bank. Although Nenni Builders required approximately $40,000 to complete construction of the remaining homes, the Bank refused to disburse any additional funds. As a result, the houses were not completed, the note was not repaid and Nenni Builders went into default.

Mr. Nenni claims that a bank official told him that neither he nor his wife would be required to guarantee the 1988 loan. Although he admits signing the 1988 loan documents, including the note and the 1988 guarantee, he claims that he never reviewed them and, therefore, did not know that he and his wife were

4

guaranteeing the 1988 loan.  Finally, Mr. and Mrs. Nenni both claim that they did not read the 1987 guarantees and did not understand that the guarantees could apply to subsequent loans made to Nenni Builders by the bank.

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment should be entered only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine if the evidence, when viewed in the light most favorable to the party opposing summary judgment, would "permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Company, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).  A fact is material if it affects the outcome of the suit.  Anderson, 477 U.S. at 248; Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)).

5

If the party seeking summary judgment establishes initially that there are no material facts in dispute, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A mere denial of liability or an unsupported assertion that factual disputes exist is insufficient to avoid summary judgment. Instead, a party opposing summary judgment must produce hard evidence. Evidence which is "merely colorable or not significantly probable" will not preclude summary judgment. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Anderson, 477 U.S. 249-50).

Applying these standards to the present case, I conclude that there are material facts in dispute. Accordingly, the FDIC is not entitled to judgment as a matter of law.

II. CHOICE OF LAW

As a threshold matter, I must determine whether this action is governed by state or federal law.

Subject matter jurisdiction in this action is based upon 12 U.S.C. §1819(b)(2)(A).[1] Accordingly, the action is governed by

_____

[1] 12 U.S.C. § 1819(b)(2)(D) provides an exception to Section 1819(b)(2)(A) jurisdiction when the FDIC is acting in its capacity as a receiver and only the interpretation of state law

6

federal law because it is "deemed to arise under the laws of the United States." Id.; D'Oench Duhme & Co. v. FDIC, 315 U.S. 447, 467-68 (1942) (Jackson, J., concurring); FDIC v. P.L.M. Int'l, Inc., 834 F.2d 248, 252 (1st Cir. 1987); Santoni v. FDIC, 677 F.2d 174, 177 (1st Cir. 1982). When applying federal common law, the United States Supreme Court and the First Circuit Court of Appeals have counseled judges that "federal law is no jurisdictional chameleon, changing complexion to match that of each state wherein lawsuits happen to be commenced because of the accidents of service of process and of the application of venue statutes." Santoni, 677 F.2d at 178 (quoting D'Oench Duhme & Co., 315 U.S. at 471-72 (Jackson, J., concurring)). Thus, in the context of a case such as the present one, a court should employ rules of decision which are consistent with the federal policies underlying the FDIC Act. Adams v. Madison Realty & Dev., Inc., 937 F.2d 845, 856 (3rd Cir. 1991); FDIC v. Alvarez Lau , 681 F. Supp. 977, 979 (D.P.R. 1988); FDIC v Tito Castro Const., 548 F. Supp. 1224, 1226 (D.P.R. 1982).

---

is necessary to decide the claim. However, the exception is inapplicable because the FDIC properly relies on federal law to respond to many of plaintiffs' contentions. See, e.g., Capizzi v. FDIC, 937 F.2d 8, 10-11 (1st Cir. 1991).

Nevertheless, when an issue may properly be decided either way without adversely affecting important federal policies, it is appropriate as a matter of federal common law to look for guidance from the law of the state which the parties presumably intended to govern their agreement. Kamen v. Kemper Fin. Serv., Inc., 111 S. Ct. 1711, 1717 (1991); see also D'Oench Duhme & Co., 315 U.S. at 474 (Jackson, J., concurring) ("no doubt many questions as to the liability of parties to commercial paper which comes into the hands of the corporation will best be solved by applying local law with reference to which the makers and the insured bank presumably contracted"). But cf. FDIC v. Singh, 977 F.2d 18, 21 (1st Cir. 1992) (without discussing impact on federal policy, court applied Massachusetts law to construe contract because the contract provided that it should be construed in accordance with Massachusetts law). Thus, I will rely on state law for guidance in interpreting and enforcing the contracts at issue in this litigation where such law is not in conflict with important federal policies.

III.  THE GUARANTEES

The Nennis make several arguments in support of their claim that the guarantees are unenforceable. First, they argue that the guarantees were intended to support an entirely different

8

loan and that the guarantees had no effect once that loan was fully satisfied. I reject this contention because it is contradicted by the plain language of the guarantees. Pursuant to the guarantees, the Nennis' obligations to guarantee debts of Nenni builders are "continuing" and "shall apply regardless of how long before or after the date hereof, any liability was or is incurred." Moreover, the guarantees specify that they may be terminated and thus rendered inapplicable to future debts only by written notice of termination. Continuing guarantees are not per se unenforceable. See, e.g., Brown Burnell Co. v. Beliste, 83 N.H. 516, 517 (1929); see also Zanditon v. Feinstein, 849 F.2d 692, 697 (1st Cir. 1988) (applying Massachusetts law). Thus, because the Nennis failed to revoke the 1987 guarantees in writing, the guarantees are valid and enforceable against them unless the Nennis and the bank reached an enforceable agreement to the contrary.

The Nennis' attempt to escape the plain language of the 1987 guarantees by claiming that they never read them. Mr. Nenni makes a similar argument with respect to the 1988 guarantee. However, a mere failure to read an agreement before signing it does not excuse the signatory's obligation to abide by the terms of the agreement. Karlberg European Tanspa v. JK-Josef Kratz

<u>Vertriebsgesellschaft mbH</u>, 618 F.Supp. 344, 346-47 (E.D. Ill. 1985) (citing Calimari & Perillo, <u>Law of Contracts</u>, §§ 9-42 to 9-46 (2d ed. 1977)); <u>cf.</u> <u>In Re 604 Columbus Ave. Realty Trust</u>, 968 F.2d 1332, 1346-47 (1st Cir. 1992) (in a case of fraud in factum, even where there is an apparently valid signature, the FDIC could not acquire rights to enforce an agreement). Accordingly, I reject this argument.

The Nennis also argue that the guarantees are unenforceable because bank officials told them that they would not be required to personally guarantee the 1988 loan. Such oral promises are unenforceable against the FDIC pursuant to the common law <u>D'Oench</u> Doctrine and its statutory counterpart, 12 U.S.C. § 1823(e). <u>Timberland Design, Inc. v. First Serv. Bank for Sav.</u>, 932 F.2d 46, 48 (1st Cir. 1991); <u>Queen v. First Serv. Bank for Sav.</u>, 129 B.R. 5, 9 (Bkrtcy D.N.H. 1991). Thus, this argument is also unavailing.

More troubling is the Nennis' argument that the guarantees cannot be enforced because the 1988 loan documents provide that the Nennis were not required to personally guarantee the 1988 loan. In support of this argument, the Nennis rely on the commitment. Specifically, they contend that because the commitment omits any reference to guarantees, the commitment

10

reflects an agreement by the parties that guarantees would not be required.

The FDIC makes several arguments in response to this contention.[2] First, it argues that the commitment was extinguished pursuant to the doctrine of merger when the loan agreement was signed. In making this argument, the FDIC relies upon paragraph 7.03 of the loan agreement which provides that "[t]his agreement, and the various loan and security agreements contemplated hereby, constitute the complete understanding between the parties and may not be changed except by subsequent agreement in writing signed by the parties." While this provision might well have extinguished the commitment if it had been signed at a different time and place from the construction loan agreement, that is not what happened here. Instead, the commitment was signed contemporaneously with the loan agreement. Under these circumstances, I cannot accept the FDIC's argument that the parties to the loan agreement intended to extinguish a commitment which was signed only seconds before the loan agreement itself. Thus, I reject the FDIC's merger argument and

---

[2]Notably, the FDIC has not argued that the commitment is unenforceable against the FDIC because it was not approved by the bank's board of directors or its loan committee as required by 12 U.S.C. § 1823(e). See, e.g., FDIC v. Rivera-Arroyo, 907 F.2d 1233, 1236 (1st Cir. 1990).

conclude that the commitment was part of the loan agreement. See, e.g., Kentucky Fried Chicken Corp. v. Collectramatic, Inc., 130 N.H. 680, 684-85 (1988) (a merger clause results in the merger of only those agreements which the parties intend to integrate into the final agreement).

The FDIC next argues that if the commitment was not extinguished, it must be interpreted together with the other loan documents. See, e.g., Bellak v. Franconia College, 118 N.H. 313, 316 (1978); Rivier College v. St. Paul Fire Ins. Co., 104 N.H. 398, 401 (1978). When this is done, the FDIC contends, it becomes evident that notwithstanding the commitment, the parties intended the 1988 loan to be subject to personal guarantees. While I accept the FDIC's interpretive premise, I cannot conclude that the loan documents unambiguously support its position on the merits.

As I have previously noted, the commitment was signed at the closing, rather than days or weeks in advance of the closing, as is typically the case with commitment letters. Moreover, the commitment does not state that it is only a summary containing some, but not all, of the important loan terms. To the contrary, the commitment identifies certain security which will be required from the borrowers and states that additional security or

conditions would be required only "if the bank discovers additional relevant facts." Thus, standing alone, the commitment does not require personal guarantees.

The note, contrary to the commitment, expressly provides for personal guarantees. The other loan documents are silent on the subject. Thus, I am confronted with loan documents which are in direct and irreconcilable conflict on an issue which is material to the FDIC's motion for summary judgment. In the face of such ambiguity, I must leave the interpretation of the contract to the trier of fact. In Re Newport Plaza Assoc. v. Durfee Attleboro Bank, 1993 U.S. App. LEXIS 2289, at *10 (1st Cir. Feb. 16, 1993). But cf. Singh, 977 F.2d at 22 (court found no ambiguity precluding summary judgment where a note provided for limited recourse against note-makers but guarantees signed by note-makers provided for personal liability). Accordingly, the FDIC's motion for partial summary judgment will be denied.

Having denied the FDIC's motion for summary judgment, I need not consider the rest of the Nennis' claims. I do so now in an effort to assist the parties in focusing their efforts on the limited number of issues which remain for trial.

13

IV.  DISBURSEMENT OF FUNDS

The Nennis argue that they are not liable on the guarantees because the bank materially breached its obligations on the 1988 loan when it forced Nenni Builders into default by failing to properly disburse the proceeds of the loan.  To the extent that this argument is based upon oral agreements with bank officials, the Nennis are estopped from proceeding by D'Oench and 12 U.S.C. § 1823(e).  However, as I discuss below, neither D'Oench nor 12 U.S.C. § 1823(e) bars the Nennis from pursuing this argument to the extent that it is based upon implied contract terms which are made a part of the loan contract by operation of law.


A.  The Duty To Perform Essential But Undefined
    Duties Reasonably

The FDIC concedes that the 1988 loan was intended to provide a revolving line of credit.  However, the FDIC has failed to identify terms in the loan documents which describe the way in which the revolving line of credit was intended to function.

Where a binding contract makes no mention of an essential term, the court will supply a term which is reasonable under the circumstances.  Cole v. Combined Ins. Co. of Am., 125 N.H. 395, 396 (1983); Restatement (Second) of Contracts, §204 (1981).  The FDIC apparently contends that the Nennis are barred from invoking

14

this accepted legal principle by D'Oench and 12 U.S.C. § 1823(e). I reject this contention.

The bank's obligation in this case to disburse funds under the line of credit in a reasonable manner was not based upon any oral understanding of the parties. Rather, the obligation existed by operation of law when the bank and Nenni Builders failed to specify in the loan documents how the revolving line of credit was to work. The FDIC has failed to identify any authority which suggests that D'Oench and 12 U.S.C. § 1823(e) sweeps so broadly as to preclude arguments based upon implied contract terms which exist by operation of the law. Moreover, the only reported decisions I have discovered on this point reach a contrary conclusion. See, e.g., Texas Refrigeration Supply, Inc. v. FDIC, 953 F.2d 975, 980-81 (5th Cir. 1992) (claims based upon contract terms implied by operation of law are not barred by D'Oench); FSLIC v. Mackie, 962 F.2d 1144, 1150-51 (5th Cir. 1992) (a duty of good faith and fair dealing is deemed by law to be part of every contract and is not barred by D'Oench); New Bank of New England v. Callahan, 798 F.Supp. 73, 77 (D.N.H. 1992) (claim based on an obligation arising from state law are presumed to be a part of every contract and are not barred by D'Oench); FDIC v. P.P.S. Assoc., No. 5:91-CV-00518 EBB, 1992 WL 309929 *5 (D. Conn.

15

Sept. 25, 1992) (good faith and fair dealing claim not precluded by D'Oench).

B. <u>Good Faith and Fair Dealing</u>

The Nennis assert that the manner in which the loan proceeds were disbursed also violated the bank's implied duty of good faith and fair dealing. The FDIC again seeks to invoke <u>D'Oench</u> and 12 U.S.C. § 1823(e) as a bar to recovery.

An implied duty of good faith and fair dealing exists in every New Hampshire contract by operation of law. <u>Centronics Corp. v. Gericom Corp.</u>, 132 N.H. 133, 143-44 (1989); <u>Restatement (Second) of Contracts</u> §205 (1981). Because this duty exists by operation of law and not by any secret agreement among the parties, <u>D'Oench</u> and 12 U.S.C. §1823(e) do not bar the Nennis from proceeding on this theory.

In summary, to the extent that the Nennis argue that their obligations under the guarantees are excused because of the bank's failure to fulfill implied terms in the loan agreement which are part of the agreement by operation of law, I hold that such claims are not barred by <u>D'Oench</u> or 12 U.S.C. § 1823(e).

## CONCLUSION

The FDIC's motion for partial summary judgment is denied. However, the Nennis do not dispute the default by Nenni Builders. Thus, the only liability issues which remain for trial are as follows: (1) whether the Nennis are not bound by the 1987 and 1988 guarantees because the loan documents provided that guarantees would not serve as security for the 1988 loan; (ii) whether the default by Nenni Builders is excused because of the bank's breach of its implied obligation to disburse funds under the revolving line of credit in a reasonable manner; and (iii) whether the default by Nenni Builders is excused because the manner in which the bank disbursed funds under the revolving line of credit breached the bank's obligation of good faith and fair dealing.


SO ORDERED.


_____
Paul Barbadoro
United States District Judge

March 12, 1993

cc:  David Rayment, Esq.
     Gerard LaFlamme, Esq.
     Peter Rotch, Esq.

17