Grafton
No. 96-322

GEORGE T. HATHORN & a.

v.

WILLIAM R. LOFTUS

February 3, 1999

*Law Office of K. William Clauson*, of Hanover (*K. William Clauson* on the brief and orally), for the plaintiffs.

*William R. Loftus, P.C.*, of Lebanon (*William R. Loftus* on the brief and orally), for the defendant.

BRODERICK, J. The plaintiffs, George T. and Mary Lou Clark Hathorn, appeal a ruling of the Superior Court (*Abramson*, J.) requiring them to pay the defendant, Attorney William R. Loftus, on a promissory note. We remand.

I

On September 24, 1987, the Hathorns purchased a group home for the elderly in Lebanon from Thomas and Jane Batchelder, who were represented by Loftus. The purchase and sale agreement recited that the sale was contingent upon the parties agreeing to a management contract. In fulfillment of this term, the parties signed an agreement to have the Batchelders manage the home. That same day, the Hathorns executed a $10,000 promissory note to the Batchelders, which was secured by a mortgage, as part of the purchase price for the property. The first of four subsequent installments on the note was payable on September 24, 1989.

In 1988, a dispute arose concerning the Batchelders' performance under the management contract, which the Hathorns elected to

terminate. In June 1989, the Hathorns sought a declaratory judgment that they lawfully terminated the management contract because the Batchelders had violated its budgetary restrictions. The Hathorns did not seek damages but merely requested an "award [of] their costs and attorney's fees" based on the express language of the management contract. Their petition made no mention of the promissory note. Loftus appeared as counsel for the Batchelders in this matter until November 1991.

In mid-August 1989, the Batchelders transferred the note and mortgage to Loftus in partial payment of his attorney's fees. At the time of the transfer, the Batchelders owed Loftus approximately $20,000. Subsequent to the transfer, the Hathorns informed Loftus that they would hold the September 1989 installment on the note in escrow pending the outcome of the declaratory judgment litigation. On August 30, 1989, the Hathorns received written notice of the assignment. The Hathorns, however, remained steadfast in their refusal to make payment.

In May 1992, an $11,027.40 judgment was entered against the Batchelders in the declaratory judgment action, representing the Hathorns' attorney's fees and costs incurred in that action. In August 1992, the Hathorns filed a petition against the Batchelders requesting that their judgment be set off against the mortgage and note. In June 1993, the trial court ruled in favor of the Hathorns and declared that the promissory note was discharged in full "subject to the rights, if any, of third parties." When Loftus refused the Hathorns' request to release the mortgage, claiming to be a holder in due course of the note, the Hathorns filed a petition to quiet title in May 1994. Loftus timely filed a counterclaim, demanding payment on the note, and the trial court ruled in his favor. The Hathorns then filed this appeal.

## II

The Hathorns contend that Loftus was not a "holder" of the note, arguing that he took the note by assignment, and not by indorsement. They also assert that the court erroneously concluded that Loftus was a "holder in due course" of the note because it improperly (1) took judicial notice of a prior court order on an unsuccessful motion for summary judgment to establish that Loftus took the note "for value," (2) applied an incorrect definition of "good faith," (3) concluded that Loftus took the note without "notice" of their set-off defense, and (4) ruled that they could not assert recoupment because their declaratory judgment action on the

management contract arose from a transaction separate from the promissory note.

The trial court applied the current version of the Uniform Commercial Code (UCC), *see* RSA 382-A:3-102 *et seq.* (1994), to conclude that Loftus prevailed as a holder in due course. The Hathorns as the appealing parties do not challenge the court's decision on this basis. Therefore, we measure the particular assignments of error in accordance with the current version of the UCC for purposes of this case.

Turning to the matter at hand, we note that the current UCC demands that Loftus be considered a holder in due course of the note if he took it (1) for value, (2) in good faith, and (3) without notice of claims to or defenses against it as identified in RSA 382-A:3-302, including recoupment. RSA 382-A:3-302 (1994). The Hathorns contend that Loftus did not satisfy these requirements.

### III

The Hathorns first argue that Loftus failed to become a "holder" of the note because his pleadings and initial sworn testimony in the quiet title action demonstrate that he took the note by assignment, not by indorsement. *See* RSA 382-A:3-201 (1994) (proper negotiation for "holder" status requires indorsement). Although the Hathorns argue that the trial court ignored the essential element of indorsement in determining whether Loftus was a holder of the note, the record indicates otherwise. In ruling on the parties' requests for findings of fact and rulings of law, the court specifically found that the Batchelders had indorsed the note to Loftus. While Loftus failed to produce the original note at trial claiming it was lost, the court applied an exception to the production requirement, *see* RSA 382-A:3-309 (1994), from which the Hathorns have not appealed.

■ Though Loftus' pleadings and initial testimony in the quiet title action revealed that he based his claim to enforce the note on an *assignment*, and not an indorsement, his ultimate testimony was different. As the Hathorns concede, Loftus eventually testified that the note was indorsed by the Batchelders but later lost. The trial court accepted this testimony. Because the trial court's finding is supported by the record, we find no error. *See Guaraldi v. Trans-Lease Group*, 136 N.H. 457, 461, 617 A.2d 648, 650 (1992).

### IV

The Hathorns next argue that the trial court erred by taking judicial notice of a prior court order which denied Loftus' renewed

motion for summary judgment to establish that the note was given "for value." The Hathorns contend that findings in an order denying summary judgment have no legal weight at a subsequent hearing on the merits. We agree that the trial court improperly relied on the summary judgment order in this case to rule that the "for value" element was previously established. *See* RSA 491:8-a, II (1997) (facts in affidavits taken as true for purpose of summary judgment motion). The summary judgment order noted that Loftus presented proof that he exchanged fair value for the note, and thus concluded that he had "met his burden with respect to [that] issue." The court, however, ultimately denied summary judgment because issues of material fact remained. It did not grant partial summary judgment on the "for value" element, nor does the record reflect that Loftus requested such an order. Therefore, the trial court improperly relied on this selected portion of the summary judgment order in ruling on the merits.

■ Loftus, however, contends that despite the trial court's reference to the summary judgment order in its written decision on the merits, it properly granted several requested findings of fact that he had established the "for value" element. Loftus asserts that these findings serve as an independent basis for affirming the court's conclusion that the "for value" element was satisfied. While an isolated review of the court's ruling on the requested factual findings suggests that it found that the "for value" element was established on the merits, the court's order on the merits states:

> The court . . . found, in its [summary judgment order], that Attorney Loftus exchanged fair value for the note. Consequently, this court need not address the fair value requirement of holder in due course status.

A consistent reading of this order and the requested findings of fact suggests that the court granted the "for value" requested factual findings as a result of its reliance on the summary judgment order, rather than on the alternative basis suggested by Loftus. Because the trial court's reliance on the summary judgment order was improper, we remand for appropriate findings on the "for value" element based on the existing record.

## V

Next, we address the Hathorns' argument that the trial court erred by applying an incorrect definition of "good faith" and by wholly ignoring Loftus' close relationship to the Batchelders as

their attorney in the original property sale and the subsequent litigation. The Hathorns assert that the trial court erred when it applied a purely subjective standard in concluding that Loftus acquired the note in good faith. They argue that while the former version of the UCC defined "good faith" to mean "honesty in fact in the conduct or transaction concerned," RSA 382-A:1-201(19) (1961), a purely subjective standard, *see Balon v. Cadillac Auto. Co.*, 113 N.H. 108, 112, 303 A.2d 194, 196 (1973), the current UCC includes an objective element of "reasonable commercial standards of fair dealing," RSA 382-A:3-103(a)(4) (1994).

■ While the trial court applied the current version of the UCC to the case generally, its conclusion that Loftus took the note in good faith was based on the purely subjective standard of the former UCC. Because we accept the application of the current version of the UCC to this case under the circumstances before us, we must conclude that the trial court applied an incorrect definition of "good faith." Accordingly, we remand this issue for the trial court's consideration.

## VI

The Hathorns also argue that the trial court erred by concluding that Loftus acquired the note without notice of their *defense* of set-off. They contend that the court erred when it concluded that Loftus did not have notice of their *claim* of set-off to the note because the Hathorns' declaratory judgment petition was equitable in nature and Loftus subjectively believed that they were unlikely to prevail. The Hathorns assert that the court failed to recognize that their request for attorney's fees and costs in the declaratory judgment petition constituted a defense of set-off or "defense or claim in recoupment," preventing Loftus from becoming a holder in due course. We initially address the Hathorns' synonymous use of the terms "recoupment" and "set-off."

Recoupment may be used defensively or affirmatively and encompasses the right of a defendant to reduce or eliminate the plaintiff's demand either because (1) the plaintiff has not complied with some cross-obligation under the contract on which the plaintiff sues, or (2) the plaintiff has violated some legal duty in making or performing that contract. *Zurback Steel Corp. v. Edgcomb*, 120 N.H. 42, 44, 411 A.2d 153, 155 (1980). By its nature, a claim or defense in recoupment concerning a negotiable instrument must arise from the transaction that gave rise to the instrument itself. *See id.*; RSA 382-A:3-305(a)(3) (1994). Set-off, however, applies when "there are mutual

debts or demands between the plaintiff and defendant at the time of the commencement of the plaintiff's action," RSA 515:7 (1997), and unlike recoupment, the mutual debts arise out of separate transactions, *see Stanley v. Clark*, 159 F. Supp. 65, 66-67 (D.N.H. 1957). Neither recoupment nor set-off helps the Hathorns in this case.

■ First, the Hathorns' request for attorney's fees and costs pursuant to the terms of the management contract in their petition for declaratory judgment cannot constitute a claim or defense in recoupment because it did not arise out of the transaction from which the note arose. The note arose from the purchase of the group home. The claim for attorney's fees and costs arose from the Batchelders' breach of the management contract. While the management contract originally stemmed from the property sale, fulfillment of the purchase and sale agreement was simply conditioned on the *execution* of the management contract, *not* on the parties' *performance* of their obligations under it. The parties satisfied this condition precedent, completed the sale, and thereafter executed the mortgage and promissory note. Subsequent performance under the management contract and the note were mutually exclusive; thus, non-performance of one did not affect the validity or enforcement of the other. Because the Hathorns' request for attorney's fees and costs arose from the Batchelders' breach of the management contract, a transaction separate from the note itself, it cannot be characterized as a claim or defense of recoupment. *See* RSA 382-A:3-305(a)(3) comment 3 (1994) (examples of claims in recoupment).

Second, the Hathorns' request for attorney's fees and costs could not constitute a claim or defense of set-off at the time Loftus acquired the note because it was not liquidated. *See* RSA 515:7 ("mutual debts or demands . . . *at the time of the commencement of the plaintiff's action*" (emphasis added)); RSA 515:8 (1997); *Petition of Keyser*, 98 N.H. 198, 200, 96 A.2d 551, 552 (1953).

■ Finally, even if the request for attorney's fees and costs constituted a claim or defense of set-off, it could not compromise Loftus' status as holder in due course because set-off, by its nature, does not arise from the transaction which gave rise to the note. *See* 6A W. HAWKLAND & L. LAWRENCE, UNIFORM COMMERCIAL CODE SERIES § 3-302:18, at 130 (1993); RSA 382-A:3-305(a)(3) comment 3 (resolving division in case law to clarify that transferee of instrument is protected from claims or defenses unrelated to transaction from which instrument arose).

Accordingly, while the trial court's rationale for rejecting any set-off or recoupment claim or defense may have been improper, we affirm its ruling on this issue "because it reached the correct result and there are valid alternative grounds to reach that result." *Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995).

## VII

Finally, we address the Hathorns' argument that the trial court erred by concluding that the management contract litigation arose from a different transaction than the property sale, which gave rise to the promissory note at issue. They assert that if the management contract and the promissory note arose from the same transaction, then Loftus was subject to the defense of recoupment under RSA 382-A:3-305(a). We have already concluded that the management contract litigation arose from a transaction separate from the property sale and thus it could not give rise to a claim or defense in recoupment. *See* RSA 382-A:3-305(a)(3). Therefore, we need not address this issue further.

*Remanded.*

JOHNSON, J., did not sit; the others concurred.