Hillsborough-northern judicial district
No. 98-044

Hillsborough-southern judicial district
No. 98-315

CHRISTIE M. WEST

v.

THOMAS M. TURCHIOE

THOMAS M. TURCHIOE

v.

CHRISTIE M. WEST

December 21, 1999

*Law Office of David M. Groff*, of Pelham (*Mike J. Demers* on the briefs and orally), for Christie M. West.

*Hamblett & Kerrigan, P.A.*, of Nashua (*J. Daniel Marr* and *Kevin W. Miner* on the briefs and orally), for Thomas M. Turchioe.

HORTON, J. Christie M. West appeals from a Superior Court (*Barry*, J.) order ruling that Thomas M. Turchioe did not breach a contract by failing to pay the balance due on a promissory note. We reverse and remand. West also appeals a Superior Court (*Dalianis*, J.) decision ordering Turchioe to pay child support. We affirm in part, vacate in part, reverse in part, and remand. As the cases have interrelated facts and were argued in tandem, we address them together.

The following facts were adduced after two bench trials. West and Turchioe began living together in Turchioe's house in 1992. In 1993, their relationship ended. To provide for the termination of their relationship, the parties entered into a promissory note and a handwritten agreement on October 1 and 2, 1993. The parties agree that West provided the preprinted promissory note while Turchioe prepared the handwritten agreement. The documents were nota-

rized together. Both parties knew that West was pregnant at the time these documents were signed. The promissory note provides for the payment by Turchioe to West of $1,000 a month for twenty-four months. Handwritten and initialed by both parties at the bottom of the preprinted promissory note is the following language: "This note is in lieu of child support through January 31, 1995 for the offspring of Thomas Turchioe and Christie West. In [the] event of no live birth, this note remains in effect." The handwritten agreement provides for the disposition of property and the responsibilities that each party would undertake in ending the relationship. Paragraph two states:

> In the event there is a loss of the baby through natural means, adoption or abortion, Christie will receive $1,000 per month for twenty four months commencing January 1994. Loss means any event which causes the loss of the baby.

West gave birth to and retains custody of the child. Turchioe paid approximately $3500 on the note and then ceased all payments, alleging that West violated the agreement by not aborting the baby or placing the child up for adoption. West then brought this suit to enforce the terms of the promissory note. Turchioe brought suit to legitimize and set custody for the child.

At the time of the legitimacy and custody hearing, the court found that West was earning $104,000 per year and Turchioe was earning $81,000 per year. The superior court set child support at $175 per week to be paid by Turchioe, which the court stated was "consistent with the child support guidelines." In addition to ordering prospective support, the court ordered the payment of $175 per week for sixty-nine weeks in retroactive support for the period between the child's birth, on March 8, 1994, and the issuance of the temporary support order on June 1, 1995. As part of its final order, the court required West to invest the retroactive support in certificates of deposit for use towards the child's college expenses or, in the event she does not attend college, for disbursement to the child upon reaching eighteen years of age. In the action by West to collect on her agreement with Turchioe, the court refused to enforce the promissory note.

On appeal, West contends that the courts erred in: (1) requiring that the retroactive support be invested for the child rather than paid directly to West; (2) calculating the amount of the retroactive child support order; (3) ordering child support in an amount less than the recommended guidelines; (4) failing to find that Turchioe

was willfully underemployed; (5) considering extrinsic evidence when interpreting the agreement between West and Turchioe; (6) ruling that the promissory note was conditional on the loss of the baby; and (7) interpreting the agreement between West and Turchioe in a manner that is inconsistent with public policy. We address each issue in turn.

■■ With regard to investing retroactive support for exclusive use by the child, the general rule is that support payments are made to the custodial adult except under special circumstances where equitable considerations warrant direct payments to the child. *Cf. McCrady v. Mahon*, 119 N.H. 247, 248, 400 A.2d 1173, 1174 (1979) (holding that no child support credit allowed for payments made directly to children except under special circumstances). When equitable circumstances exist that would justify making support payments to the child, we will not overrule the sound discretion of the trial judge. *Id.* at 249, 400 A.2d at 1174. In this case evidence supports the superior court's decision to have the retroactive support invested for future payment to the child. This evidence includes testimony that West was: (1) in substantial debt to the Internal Revenue Service; (2) financially overextended due to poor judgment; and (3) neglectful of some of her financial responsibilities. In addition, at the time the trial court issued its order in March 1998, Turchioe had been paying support for nearly three years, and West was earning $104,000 a year. The trial court could properly rely on this evidence as providing the necessary equitable basis for having the retroactive support invested for the child's college expenses or future payment to the child.

■ We next address West's contention that the court erred in calculating the retroactive child support payments. The trial court has broad discretion in support matters, and the appellant has the burden of showing how the court's order was improper or unfair. *Azzi v. Azzi*, 118 N.H. 653, 655, 392 A.2d 148, 149 (1978). The court found that during 1993 and 1994, prior to incorporating his business, Turchioe was earning in excess of $120,000 per year. During this period, the court in the legitimacy and custody proceeding found that Turchioe voluntarily paid a total of $250 in child support. The court further found that based on Turchioe's income in 1992, 1993, and 1994, Turchioe's child support would have been $380 per week according to the child support guidelines. The court, however, ordered retroactive child support in the amount of $175 per week. The court's order on retroactive support contains no indication that the court was linking the retroactive amount ordered to Turchioe's

income or the child support guidelines. The court specifically denied West's request to find that retroactive child support should be set in accordance with the guidelines at $380 per week. The decision to award retroactive child support as part of a legitimacy hearing is within the trial court's sound discretion and will not be disturbed on appeal absent abuse of that discretion. *Nicolazzi v. Nicolazzi*, 131 N.H. 694, 696, 559 A.2d 1335, 1337 (1989). West having failed to demonstrate any error in setting the amount, we will not disturb the trial court's decision to award retroactive support of $175 per week.

■ With regard to prospective support, West argues that the superior court awarded an amount that is not consistent with the child support guidelines found in RSA 458-C:3 (1992) (amended 1998). Although the court stated that the amount was "consistent with the child support guidelines," Turchioe admitted at oral argument that the award is not consistent with the guidelines. Turchioe argues, however, that the court intended to deviate from the guidelines because the judge denied West's motion to reconsider, which raised the same issue. Turchioe further points to evidence that could provide a basis for the trial court to intentionally set support in an amount less than the amount recommended by the guidelines. We refuse to second guess the correct interpretation of the trial court's written order, especially when it contains a clear inconsistency with no obvious reason indicating the court's intent. We, therefore, vacate the amount of ordered child support for the prospective support, *cf. Greenan v. Lobban*, 143 N.H. 18, 23, 717 A.2d 989, 992 (1998), and remand to the superior court to award support consistent with the child support guidelines or to make findings that justify why the court deviated from the guidelines, *see Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 507-08, 629 A.2d 812, 815-16 (1993) (special circumstances must exist to deviate from guidelines).

■ West next takes exception to the court's finding that Turchioe was not willfully underemployed. Determining whether a party is willfully underemployed is a question for the fact finder whose decision will not be disturbed on appeal if supported by evidence on the record. *Id.* at 507, 629 A.2d at 815. Keeping in mind that it is generally appropriate for the trial court to set prospective support based on current income figures rather than past earnings or averaged earnings, *Hillebrand v. Hillebrand*, 130 N.H. 520, 526, 546 A.2d 1047, 1050-51 (1988), we turn to the facts before the trial court: Turchioe was working full time; he recently began a new company; he was earning substantially more than the average

professional in his chosen field; and his income had dropped from more than $120,000 per year to $81,000 per year after beginning his own business. We find that these facts provide the necessary basis for the court's finding that Turchioe was not willfully underemployed. *See, e.g., Wheaton-Dunberger*, 137 N.H. at 507, 629 A.2d at 815.

We now turn to the contract case involving the agreement and promissory note. The superior court found that RSA 382-A:3-117 (1994) (effective January 1, 1994) controlled the relationship between the agreement and the note. West, as the appealing party, does not challenge the court's use of the current version of the Uniform Commercial Code (UCC). "Therefore, we measure the particular assignments of error in accordance with the current version of the UCC for purposes of this case." *Hathorn v. Loftus*, 143 N.H. 304, 309, 726 A.2d 1278, 1280 (1999). *But see Barnsley v. Empire Mortgage Ltd. Partnership V*, 142 N.H. 721, 723, 720 A.2d 63, 64 (1998) (using 1961 version reviewing a summary judgment). RSA 382-A:3-117 states:

> Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.

The superior court determined that the note was a negotiable instrument that was intended to be read with the handwritten agreement because they were part of the same transaction. The trial court further found that the language in paragraph two of the handwritten agreement was intentionally included by the parties and it conditioned payment under their contract. Therefore, the court reasoned that under RSA 382-A:3-117, the language in paragraph two of the agreement limited Turchioe's liability on the note by conditioning any payment on the loss of the baby "through natural means, adoption or abortion."

The construction of a written contract, including whether a contract term is ambiguous, is a question of law for this court.

*Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 395, 628 A.2d 260, 262 (1993). When interpreting a contract, we focus on the intent of the contracting parties at the time they entered into the agreement. *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984). We first determine if the document or documents are a complete integration of the agreement. *MacLeod v. Chalet Susse Int'l, Inc.*, 119 N.H. 238, 243, 401 A.2d 205, 209 (1979). In so doing, we consider the formation of the contract "in view of all the surrounding circumstances." *Id.* In this case, each party prepared a document that was signed by both and notarized on the same day. Both documents contained handwritten provisions. In the case of the promissory note, the handwritten provisions were initialed by both parties. The handwritten provisions on the promissory note show the parties' intent under the integrated agreement that Turchioe pay the promised amount of money "in lieu of child Support" as well as under other circumstances. The parties each provided handwritten provisions in documents prepared for simultaneous execution. Additionally, the terms of an integrated agreement may appear in a promissory note without being automatically limited in their applicability to the portion of the document that is a negotiable instrument subject to RSA 382-A:3-117. *Cf. Maine Bonding & Cas. Co. v. Foundation Constructors*, 105 N.H. 470, 473, 202 A.2d 481, 483 (1964); *F.D.I.C. v. Hennessee*, 966 F.2d 534, 537 (10th Cir. 1992); *Mark Twain Kansas City Bank v. Cates*, 810 P.2d 1154, 1161 (Kan. 1991). Therefore, we hold that the handwritten language at the bottom of the preprinted promissory note was part of the integrated agreement between the parties.

We now turn to the interpretation of the integrated agreement, looking first to its plain language. *See Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995). If the provisions of the integrated agreement are not ambiguous when viewed in the context of the entire agreement, we interpret the contract as a matter of law. *Holden Eng'g and Surveying*, 137 N.H. at 395, 628 A.2d at 262. In interpreting a multiple document agreement, we seek to "harmonize and give effect to the provisions of the various documents so that none will be rendered meaningless." *Bellak v. Franconia College*, 118 N.H. 313, 316, 386 A.2d 1266, 1268 (1978). Both the handwritten agreement and the terms at the bottom of the promissory note provide for the same monthly payments through January 31, 1996. The handwritten agreement provides for making these payments should West miscarry, choose to abort, or place the child for adoption. The terms at the bottom of

the promissory note, which state that payments are "in lieu of child support," provide for making these payments if West chooses to retain custody of the child. Any other interpretation of the terms at the bottom of the promissory note would render them meaningless. *See id.* A harmonic reading of the two documents shows that the obligation under the note "child support" and "in the event of no live birth" is defined and expanded in the agreement to include "loss of the baby through natural means, adoption or abortion." This latter clause should not be read as the exclusive basis for the agreed payment, or a condition therefor, but rather an explanation and expansion (adoption) of the bases for payment. 4 W. JAEGER, WILLISTON ON CONTRACTS § 601, at 310 (3d ed. 1961) ("[T]o ascertain and to give effect to the true intention of the parties the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless."). West chose to retain custody of the child and is therefore entitled to payment under the terms of the integrated agreement.

■ Turchioe has no defense to liability on the promissory note under RSA 382-A:3-117. That statute would provide a defense to Turchioe's liability on the promissory note only to the extent that the integrated agreement modified, supplemented, or nullified his obligation under the note. *Mundaca Inv. Corp. v. Febba*, 143 N.H. 499, 503, 727 A.2d 990, 993 (1999). As we have construed the integrated agreement, it did not modify, supplement, or nullify Turchioe's obligation under the note to make payments to West if she retained custody of the child.

We now turn to the remaining contract issues on appeal. Our ruling that the handwritten provisions at the bottom of the promissory note were negotiated terms of the contract that provided for payments "in lieu of child support" makes the note enforceable by the terms of the parties' integrated agreement. Therefore, we do not address the issues of whether it was appropriate for the trial court to consider extrinsic evidence to interpret the terms of the agreement and whether the term "[i]n the event there is" found in the handwritten portion of the agreement provided by Turchioe creates a condition precedent to payment on the note. Likewise, because the note is presently enforceable without the loss of the child, we do not address the issue of whether a contract that conditions payments on a miscarriage, abortion, or adoption violates public policy. *See Dime Savings Bank of New York v. Town of Pembroke*, 142 N.H. 235, 238, 698 A.2d 539, 541 (1997) (refusing to address arguments when other issues are dispositive).

We reverse and remand this case to the superior court to enter judgment for West on the agreement and promissory note. In determining the amount owed West under the agreement, the court should give Turchioe credit for any child support he is required to make in the legitimacy and custody action for the period before his obligations "in lieu of child support through January 31, 1995," ceased under the promissory note, to avoid having him pay double child support under the combination of a retroactive support order and his contract with West. This consideration should be given to Turchioe regardless of the fact that the trial court ordered retroactive support invested for the child. *Cf. Griffin v. Avery*, 120 N.H. 783, 786, 424 A.2d 175, 177 (1980).

In summary, we vacate the amount of weekly prospective child support set by the superior court in the legitimacy and custody action and remand to the superior court for the determination of that amount. Otherwise, we affirm the orders of the court in the legitimacy and custody action. We reverse the ruling of the superior court in the contract action regarding the interpretation of the contract and remand for a determination of the amount due West.

*No. 98-044 affirmed in part,*
*vacated in part, and remanded;*
*No. 98-315 reversed in part and*
*remanded.*

All concurred.